# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J. Fisher, Jr.                                                                    Elisabeth A. Shumaker
Clerk                                                                                            Chief Deputy Clerk

October 31, 1997


    **TO:**    ALL RECIPIENTS OF THE CAPTIONED OPINION

    **RE:**    97-1312 Elam Construction v. RTD
            Filed October 28,1997, Per Curiam


Please be advised of the following correction to the captioned decision:

The district court number on the cover of the published opinion is incorrect. The correct number is 97-K-1909.

Please make the appropriate correction to your copy.

                            Very truly yours,

                            Patrick Fisher, Clerk



                            Beth Morris
                            Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 28 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ELAM CONSTRUCTION, INC.,
a Colorado corporation; JOHN T.
DOOLITTLE & ASSOCIATES, INC., a
Connecticut corporation;
TRANSIT '97, INC., a Colorado
corporation and issue committee,

      Plaintiffs-Appellees,

v.

REGIONAL TRANSPORTATION
DISTRICT, a statutory special district and
political subdivision of the State of
Colorado,

      Defendant-Appellant.

No. 97-1312

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 97-K-1909)

---

Submitted on the briefs:

Edward T. Ramey and Stephanie Y. O'Malley, of Isaacson, Rosenbaum, Woods & Levy,
P.C., and Mark Silverstein, American Civil Liberties Union of Colorado, Denver,
Colorado, for Plaintiffs-Appellees.

Walter Gerash, of Gerash, Robinson & Miranda, P.C., and John S. Pfeiffer and Meghan
W. Martinez, of Fairfield and Woods, P.C., Denver, Colorado, for Defendant-Appellant.

Before EBEL, KELLY, and BRISCOE, Circuit Judges.

PER CURIAM.

Defendant-Appellant Regional Transportation District (RTD) appeals from the district court's order granting preliminary injunctive relief to plaintiffs. This court previously denied RTD's motion for stay pending appeal and ordered expedited briefing on the merits. We now affirm the order of the district court.[1]

RTD is a statutory special district which provides public transportation services in the Denver regional area. See generally Colo. Rev. Stat. §§ 32-9-101-164. RTD is funded in part by sales taxes paid within its District. See id. § 119(2)(a). During the 1997 legislative session, the Colorado legislature authorized RTD to submit to the voters a referendum increasing the current RTD sales tax rate from the current six-tenths of one percent to a total of one percent, for the purpose of financing certain construction and improvement projects commonly referred to as the "Guide the Ride" plan. See id. § 119.3. RTD submitted the referendum to the voters for approval in the ballot issue election to be held on November 4, 1997.

---

[1] After examining the expedited briefs filed, and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

At its regular meeting on August 19, 1997, RTD's board of directors adopted

Resolution No. 15, Series of 1997, entitled "'Guide the Ride' is Not for Sale." Resolution

No. 15's stated purpose was to avoid "the influence of special interests and financially

concerned forces" on the referendum election. The resolution provided that in the event

the sales tax referendum was successful, RTD would not enter into any financial or

contractual relationship, until the year 2015, with any individual or entity which had

donated more than $100.00 to any campaign seeking to affect the outcome of the

referendum. Existing contracts were exempted, as were donations made on or prior to

August 1, 1997.

Plaintiffs Elam Construction, Inc. and John T. Doolittle & Associates, Inc., claim

that Resolution No. 15 has chilled the exercise of their First Amendment rights of

political speech and association by preventing them, at the cost of losing contracts with

RTD, from contributing funds in excess of $100.00 to a campaign in connection with the

referendum. Plaintiff Transit '97, Inc., a principal campaign advocate of the "Guide the

Ride" referendum, asserts that Resolution No. 15 has resulted in substantial constriction

and official muzzling of its ability to engage in political speech and association and to

communicate its political message concerning the referendum issue. Plaintiffs sued RTD

pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201,

contending that Resolution No. 15 violated their First Amendment rights. The district

court, finding that Resolution No. 15 had created an impermissible chilling effect on

plaintiffs' First Amendment rights, preliminarily enjoined RTD from enforcing the resolution. It also required RTD to provide notice of the injunction to parties previously notified of the resolution. RTD appealed to this court from the district court's order. See 28 U.S.C. § 1292(a).

In its opening brief in this court, RTD argued that it was an arm of the state of Colorado, and therefore not a "person" subject to suit under § 1983. See, e.g., Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Because the Declaratory Judgment Act does not itself confer jurisdiction on the federal courts, RTD's argument, if successful, could have meant that the district court lacked jurisdiction to entertain this action. See, e.g., Cardtoons, L.C. v. Major League Baseball Players Ass'n, 95 F.3d 959, 964 (10th Cir. 1996). Moreover, although RTD did not argue that it possessed Eleventh Amendment immunity, its contention that it was an "arm of the state" caused us to raise sua sponte the issue of whether this action was barred by the Eleventh Amendment. See Flores v. Long, 110 F.3d 730, 732-33 (10th Cir. 1997). After further jurisdictional briefing, we now conclude that RTD is a political subdivision of the state of Colorado, is not an arm of the state of Colorado, does not participate in Colorado's Eleventh Amendment immunity, and is a "person" within the meaning of § 1983. The district court therefore had jurisdiction to entertain this action.

The Eleventh Amendment immunizes states from suits in law or equity, including injunctive actions. See Cory v. White, 457 U.S. 85, 90-91 (1982). Under the arm-of-the-

state doctrine, this immunity extends to entities created by state governments which operate as their alter egos or instrumentalities. See Mascheroni v. Board of Regents, 28 F.3d 1554, 1559 (10th Cir. 1994). It does not, however, extend to political subdivisions of the state, such as counties or municipalities. See Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 401 (1979).

In determining whether a particular entity such as RTD is an "arm of the state" or a "political subdivision" of Colorado, we examine such elements as "the state law characterization of the entity, the guidance and control that the state exercises over the entity, the degree of state funding the entity receives, and whether the state has empowered the entity to issue bonds and levy taxes." Mascheroni, 28 F.3d at 1559. Historically, the most important consideration is whether a judgment against the entity would be paid from the state treasury. See Hess v. Port Authority Trans-Hudson Corp., 513 U.S. 30, 48 (1994). The state's potential legal liability is of central importance. See Regents of the University of Cal. v. Doe, 117 S. Ct. 900, 904 (1997). For our most current and comprehensive discussion of the various Eleventh Amendment factors that should be considered in deciding whether an entity is an "arm of the state" or a "political subdivision of the state," see Duke v. Grady Municipal Schools, ___F.3d___, No. 96-2135 (10th Cir. Oct. 20, 1997) (concluding that a local school district in New Mexico was not an "arm of the state" of New Mexico, and therefore not entitled to Eleventh

Amendment immunity, and overturning our previous decision of Martinez v. Board of

Education, 748 F.2d 1393 (10th Cir. 1984) pursuant to unanimous en banc authority).

The Colorado Statutes provide that RTD shall have "the duties, privileges,

immunities, rights, liabilities and disabilities of a public body politic and corporate," and

that it "shall be a political subdivision of the state." Colo. Rev. Stat. § 32-9-119(1)(a).

RTD's statutory powers include the ability to "sue and be sued," id. § 32-9-119(1)(d), to "

borrow money and to issue district securities evidencing same," id. § 32-9-119(1)(f), to

"levy and cause to be collected taxes on all taxable property within the district," id. § 32-

9-119(1)(i), to "fix and from time to time increase or decrease the revenues for services

and facilities provided by the district," id. § 32-9-119(1)(m), and to "levy uniformly

throughout the district a sales tax" creating "revenue to finance the operations of the

district, to defray the cost of construction of capital improvements and acquisition of

capital equipment, and to pay the interest and principal on securities of the district," id.

§ 32-9-119(2)(a). RTD is also granted "all rights and powers necessary or incidental to

implied from the specific powers granted in this article," id. § 32-9-119(1)(x).

The state of Colorado exercises very little oversight over the day-to-day operations

of RTD. RTD is required to make recommendations to the state highway legislative

review committee, see id. § 32-9-119.7(5), (7), and to present a copy of its annual budget

to the transportation legislative review committee for review of statutory budgeting

criteria, see id. § 32-9-119.7(4).  The state auditor may, upon affirmative vote of the legislature, be required to audit RTD.  See id. § 32-9-115(3).

By statute, RTD is required to pay all judgments recoverable against it from its own reserves, appropriated or unappropriated funds, or to levy its own tax for that purpose.  See id. § 24-10-113.  Bonds issued by RTD "shall not in any way create or constitute any indebtedness, liability, or obligation of the state or of any political subdivision thereof, except the district."  Id. § 32-9-145.

Applying the factors outlined above, we conclude (1) that the state of Colorado has explicitly characterized RTD as a "body . . . corporate" and a "political subdivision" of the state; (2) that the guidance and control exercised by the state over RTD's operations are minimal in comparison with the operational powers conferred upon the district by statute; (3) that RTD has been vested with nearly total responsibility for its own funding; and (4) that the public fisc of the state of Colorado is not responsible for judgments entered against RTD.  RTD, then, is a "political subdivision" of the state of Colorado, and not an "arm of the state."  As such it does not participate in Colorado's Eleventh Amendment immunity.

RTD's argument that it is not a "person" under § 1983 also fails.  In Monell v. Department of Social Services, 436 U.S. 658, 690 n.54 (1978), the Supreme Court held that "local government units which are not considered part of the State for Eleventh Amendment purposes" are "persons" within the meaning of § 1983.  As RTD indicates,

the Supreme Court later held that states and their officials acting in their official capacities are not "persons" for § 1983 purposes. See Will, 491 U.S. at 71. The Supreme Court specifically stated, however, that this holding did not affect its previous decision in Monell. See id. at 70 ("Conversely, our holding here does not cast any doubt on Monell, and applies only to States or governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes."). RTD, which is not an "arm of the state," but is rather a local governmental entity, is a "person" for purposes of § 1983.

Having concluded that the district court had jurisdiction over this action, we turn to the merits. We review the district court's order granting a preliminary injunction for abuse of discretion. See Walmer v. United States Dep't of Defense, 52 F.3d 851, 854 (10th Cir.), cert. denied, 116 S. Ct. 474 (1995). In order to establish their entitlement to preliminary injunctive relief, plaintiffs must show that they will suffer irreparable injury unless the injunction issues; that the threatened injury to them outweighs the damage the injunction may cause to the opposing party; that the injunction, if issued, would not be adverse to the public interest; and that there is a substantial likelihood that plaintiffs will succeed on the merits. See id. We consider plaintiffs' likelihood of success on the merits first, as that element requires the most detailed analysis.

In Citizens Against Rent Control/Coalition for Fair Housing v. City of Berkeley, 454 U.S. 290 (1981), the Supreme Court considered the constitutionality of a municipal ordinance placing a dollar limitation on contributions to committees formed to support or

oppose ballot referenda. The California Supreme Court had found the ordinance constitutional "because it ensured that special interest groups could not 'corrupt' the initiative process by spending large amounts to support or oppose a ballot measure." Id. at 293. The Supreme Court reversed. It drew a distinction between limitations on contributions to candidates for political office and their committees, which are permitted in order to avoid corruption, see Buckley v. Valeo, 424 U.S. 1 (1976), and limitations on contributions to committees seeking to support or oppose a ballot measure. In contrast with the restrictions permitted for contributions to candidates, the Court held, "there is no significant state or public interest in curtailing debate and discussion of a ballot measure." Citizens Against Rent Control/Coalition for Fair Housing, 454 U.S. at 299; see also First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 790 (1978) ("Referenda are held on issues, not candidates for public office. The risk of corruption perceived in cases involving candidate elections . . . simply is not present in a popular vote on a public issue.").

RTD concedes the force of these precedents, but asserts that they are inapplicable here. This referendum election, RTD argues, is more like a "candidate" election than a typical "ballot issue" election. RTD contends that after the election, its board will function like a successful political candidate, distributing revenue in response to requests for proposals and bids, and contracts for projects purchased with the additional sales tax

revenues. Therefore, it argues, this election presents a very real danger of corruption, or perceived corruption, not ordinarily present in a referendum election.

We cannot accept RTD's contention that monies spent advocating or opposing the increased sales tax is the equivalent of a "contribution" to the RTD board. The effect of contributions here differs radically from that of the typical contribution designed to further the election of a political candidate. At its most basic, the outcome of the referendum will not directly affect the composition of the RTD board, or the compensation of its members, which is fixed by statute. See Colo. Rev. Stat. § 32-9-117. Moreover, even assuming that the RTD board can be likened to a "candidate" in the referendum election, there has been no showing that contributions to organizations advocating passage of the referendum are "coordinated" in any way with RTD's own "campaign" efforts on behalf of the referendum. Rather, such contributions are better analogized to "independent" expenditures on behalf of a candidate, which cannot be limited without running afoul of basic First Amendment protections. See Buckley, 424 U.S. at 46-51; see also Colorado Republican Fed. Campaign Comm. v. FEC, 116 S. Ct. 2309, 2315-17 (1996) (plurality opinion).

We conclude that plaintiffs have amply shown that they are likely to succeed on the merits of their challenge to Resolution No. 15. We also agree with the district court that allowing Resolution No. 15 to remain in effect will result in a chilling effect on plaintiffs' First Amendment rights, constituting an irreparable harm to their interests.

RTD's asserted interest in preventing corruption, in light of its use of an impermissible restriction on speech, does not outweigh the harm asserted by plaintiffs. The public interest also favors plaintiffs' assertion of their First Amendment rights. For the foregoing reasons, the district court did not abuse its discretion, either in enjoining enforcement of Resolution No. 15, or in requiring RTD to provide notice of the injunction to persons whose First Amendment rights may have been chilled by previous notice of its provisions.[2]

The order of the United States District Court for the District of Colorado granting a preliminary injunction to plaintiffs, entered October 16, 1997, nunc pro tunc, September 5, 1997, is AFFIRMED.

---

[2]    RTD has presented additional materials to this court which it did not present to the district court. RTD argues that the district court should have granted its requested continuance of the preliminary injunction hearing so that it could present these materials and other, unspecified evidence or argument against the injunction. We do not consider materials submitted to us for the first time on appeal. See John Hancock Mutual Life Ins. Co. v. Weisman, 27 F.3d 500, 506 (10th Cir. 1994) (summary judgment case). RTD fails to show that the district court abused its discretion by denying the requested continuance.