**JOHNSON WORLDWIDE ASSOCIATES, INC.,** Plaintiff–Appellee,

v.

**ZEBCO CORPORATION and Brunswick Corporation,** Defendants–Appellants.

No. 98–1331.

United States Court of Appeals, Federal Circuit.

April 27, 1999.

Rehearing and Suggestion for Rehearing En Banc Denied June 22, 1999.

---

David L. De Bruin, Michael Best & Friedrich, LLP, of Milwaukee, Wisconsin, argued for plaintiff-appellee. Of counsel was Kimberly C. Tate.

Kenneth J. Jurek, McDermott, Will & Emery, of Chicago, Illinois, argued for defendants-appellants. With him on the brief was Rosanne J. Faraci.

Before MAYER, Chief Judge, CLEVENGER, and GAJARSA, Circuit Judges.

CLEVENGER, Circuit Judge.

Zebco Corporation and Brunswick Corporation appeal a summary judgment of patent infringement granted in favor of Johnson Worldwide Associates by the United States District Court for the Western District of Wisconsin. See *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, No. 97–C–453–S, slip op. at 19 (W.D.Wis. Apr. 2, 1998). Because the district court correctly construed the claims of the patent at issue and properly found no genuine issues of material fact regarding whether the patent was infringed, we affirm.

I

Johnson Worldwide Associates ("Johnson") is the holder of U.S. Patent No. 5,202,835 ("the '835 patent"), entitled "Trolling Motor With Heading Lock," which issued on December 15, 1992.[1] The '835 patent is generally directed to a steering control apparatus for small outboard motors, such as electric trolling motors. Trolling motors are an alternate propulsion source for small watercraft, generally intended for use while actively fishing—when the noise, vibration, and speed caused by larger or more powerful motors would diminish the chances of enticing fish to the proffered bait.

A

In broad terms, the invention of the '835 patent is a form of autopilot, described in the patent as a "heading lock," enabling directional control over the watercraft to be maintained without constant manipulation of trolling motor controls. The preferred embodiment of the '835 patent, as set forth in the written description and figures, employs a compass mounted to the head of the "heading lock" unit, which monitors the direction of the thrust motor, specifically noting that the direction of the thrust motor is considered to be the same as the direction of the boat, as the trolling motor is mounted on the bow of the boat. *See* '835 patent, col. 4, lines 48–51. Claim 1 of the '835 patent, the only independent claim alleged to be infringed, provides as follows:

1. A heading lock coupled to a trolling motor producing a thrust disposed to pull a watercraft, said heading lock comprising:

   a steering motor coupled to said trolling motor, said steering motor being disposed to affect the orientation of said trolling motor in response to input signals;

   a steering circuit electrically coupled to said steering motor, said steering circuit [being] disposed to generate

---

1. The '835 patent issued from U.S. Patent Application No. 920,254 ("the '254 application"), filed on July 17, 1992, which was a continuation of U.S. Patent Application No. 537,586 ("the '586 application"), filed June 14, 1990. Johnson also holds U.S. Patent No. 5,172,324 ("the '324 patent"), entitled "Electronic Steering System," which matured from the '586 application but is not at issue in this case.

said input signals to said steering motor in response to heading signals; and

a heading detector electrically coupled to said steering circuit, said heading detector being disposed to transmit said heading signals to said steering circuit.

Zebco Corporation and Brunswick Corporation (collectively, "Zebco") sell a product under the trade name "AutoGuide" that maintains directional control of a trolling motor by use of a magnetometer located in a foot pedal. The foot pedal also contains the user controls. A microprocessor in the foot pedal sends steering signals to the steering motor through wires connecting the foot pedal to the trolling motor unit. The location of the magnetometer (in the foot pedal) is thus distinct from the location of the compass (fixed to the trolling motor head) depicted in the preferred embodiment of the '835 patent. Whether this fact is sufficient for Zebco to escape infringement of the '835 patent is the subject of this appeal.

### B

In 1997, Johnson filed suit against Zebco, alleging, inter alia, that the AutoGuide unit infringed the claims of the '835 patent. The parties presented cross-motions for summary judgment on patent infringement in early 1998. On April 2, 1998, the district court agreed with Johnson's proffered claim construction, granted Johnson's motion for summary judgment of infringement, and denied Zebco's motions. The court held that there was nothing in the intrinsic evidence of the '835 patent that compelled or supported the narrow construction of the disputed terms in the claims urged by Zebco, namely that the term "heading" in "heading signal" was limited to the direction of the trolling motor, and that the term "coupled" in "heading lock coupled to a tolling motor" was limited to a mechanical or physical connection. Without these limitations, on stipulated facts, the district court found that each element of the construed claim was literally present in Zebco's AutoGuide device. This appeal followed, vesting this court with jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1994).

### II

We review the grant of a summary judgment de novo. See *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994). In doing so, we must keep in mind that summary judgment is appropriate only if there is no genuine issue of material fact. See Fed. R.Civ.P. 56(c). To this end, the court must draw all reasonable factual inferences in favor of the nonmovant. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

An infringement analysis is a two-step process in which the court first determines, as a matter of law, the correct claim scope, and then compares the properly-construed claim to the accused device to determine, as a matter of fact, whether all of the claim limitations are present, either literally or by a substantial equivalent, in the accused device. See *Renishaw PLC v. Marposs Societa´ per Azioni*, 158 F.3d 1243, 1247–48, 48 USPQ2d 1117, 1120 (Fed.Cir.1998); *General Mills, Inc. v. Hunt–Wesson, Inc.*, 103 F.3d 978, 981, 41 USPQ2d 1440, 1442 (Fed.Cir.1997); *Young Dental Mfg. Co. v. Q3 Special Prods., Inc.*, 112 F.3d 1137, 1141, 42 USPQ2d 1589, 1592 (Fed.Cir.1997). Because the relevant aspects of the accused device's structure and operation are undisputed in this case, the question of whether Zebco's AutoGuide product infringes the claims of Johnson's '835 patent turns on the interpretation of those claims. See *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578, 37 USPQ2d 1365, 1370 (Fed. Cir.1996) ("Where, as here, the parties do not dispute any relevant facts regarding the accused product but disagree over [claim interpretation], the question of liter-

al infringement collapses to one of claim construction and is thus amenable to summary judgment.").

. As we alluded to above, the crux of Zebco's argument is that the '835 patent covers only those trolling motor-autopilot systems that include a compass or other directional indicator physically attached to the trolling motor. Zebco arrives at this conclusion by the following route: (1) Zebco considers the "heading lock" invention of the '835 patent to be concerned only with the direction and orientation of ·the trolling motor rather than the boat; and (2) therefore the heading lock—which, according to claim 1, includes a heading detector "disposed to transmit … heading signals"—must be physically attached to the trolling motor. Because the accused AutoGuide systems undisputedly contain a directional indicator (a "heading detector") in a foot pedal—attached to the trolling motor via wires rather than mechanically—Zebco argues that Johnson's infringement claim must fail.

While Zebco recognizes that claim 1, the broadest claim at issue, does not explicitly require that the "heading detector" be mechanically coupled to the trolling motor, it nonetheless suggests that a proper interpretation of the terms "heading signal" and "coupled" in the language of claim 1 compels such a limited claim scope. In doing so, Zebco points out that Figure 1 of the '835 patent, and at least some of the language in the written description, suggest that the preferred embodiment of the invention includes a compass mechanically attached to the trolling motor. This case, then, presents the question of when it is permissible to narrow the scope of broad claim language by reference to embodiments described and depicted in the balance of the specification.

### A

We begin, as with all claim interpretation analyses, with the language of the claims. *See Renishaw*, 158 F.3d at 1248, 48 USPQ2d at 1120; *Abtox, Inc. v.*

*Exitron Corp.*, 122 F.3d 1019, 1023, 43 USPQ2d 1545, 1548 (Fed.Cir.1997); *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 619–20, 34 USPQ2d 1816, 1819 (Fed.Cir. 1995). The general rule is, of course, that terms in the claim are to be given their ordinary and accustomed meaning. *See Renishaw*, 158 F.3d at 1249, 48 USPQ2d at 1121; *York Prods., Inc. v. Central Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1572, 40 USPQ2d 1619, 1622 (Fed.Cir.1996). General descriptive terms will ordinarily be given their full meaning; modifiers will not be added to broad terms standing alone. *See, e.g., Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 865–66, 45 USPQ2d 1225, 1229 (Fed.Cir.1997) (unmodified term "reciprocating" not limited to linear reciprocation); *Bell Communications*, 55 F.3d at 621–22, 34 USPQ2d at 1821 (unmodified term "associating" not limited to explicit association); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 987, 6 USPQ2d 1601, 1606 (Fed.Cir.1988) (unmodified term "plasticizer" given full range of ordinary and accustomed meaning). In short, a court must presume that the terms in the claim mean what they say, and, unless otherwise compelled, give full effect to the ordinary and accustomed meaning of claim terms. *See, e.g., Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646, 33 USPQ2d 1038, 1039 (Fed. Cir.1994); *E.I. du Pont de Nemours & Co. v. Phillips Petroleum*, 849 F.2d 1430, 1433, 7 USPQ2d 1129, 1131 (Fed.Cir.1988); *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 759, 221 USPQ 473, 477 (Fed.Cir. 1984).

In order to overcome this heavy presumption in favor of the ordinary meaning of claim language, it is clear that "a party wishing to use statements in the written description to confine or otherwise affect a patent's scope must, at the very least, point to a term or terms in the claim with which to draw in those statements." *Renishaw*, 158 F.3d at 1248, 48 USPQ2d at 1121. That is, claim terms cannot be nar-

rowed by reference to the written description or prosecution history unless the language of the claims invites reference to those sources. *See, e.g., McCarty v. Lehigh Val. R.R.,* 160 U.S. 110, 116, 16 S.Ct. 240, 40 L.Ed. 358 (1895) ("[I]f we once begin to include elements not mentioned in the claim in order to limit such claim . . ., we should never know where to stop."); *Renishaw,* 158 F.3d at 1249, 48 USPQ2d at 1121. In other words, there must be a textual reference in the actual language of the claim with which to associate a proffered claim construction.

Our case law demonstrates two situations where a sufficient reason exists to require the entry of a definition of a claim term other than its ordinary and accustomed meaning. The first arises if the patentee has chosen to be his or her own lexicographer by clearly setting forth an explicit definition for a claim term. *See In re Paulsen,* 30 F.3d 1475, 1480, 31 USPQ2d 1671, 1674 (Fed.Cir.1994); *Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1387–88, 21 USPQ2d 1383, 1386 (Fed.Cir.1992); *Lear Siegler, Inc. v. Aeroquip Corp.,* 733 F.2d 881, 888–89, 221 USPQ 1025, 1031 (Fed.Cir.1984). The second is where the term or terms chosen by the patentee so deprive the claim of clarity that there is no means by which the scope of the claim may be ascertained from the language used. *See Eastman Kodak Co. v. Goodyear Tire & Rubber Co.,* 114 F.3d 1547, 1554, 42 USPQ2d 1737, 1741 (Fed. Cir.1997) (looking past claim language because of lack of clarity), overruled on other grounds by *Cybor Corp. v. FAS Technologies, Inc.,* 138 F.3d 1448, 46 USPQ2d 1169 (Fed.Cir.1998) (en banc); *J.T. Eaton & Co. v. Atlantic Paste & Glue Co.,* 106 F.3d 1563, 1568, 41 USPQ2d 1641, 1646 (Fed. Cir.1997) (Because "[the disputed claim term] is a term with no previous meaning to those of ordinary skill in the prior art[,][i]ts meaning, then, must be found [elsewhere] in the patent."); *North Am. Vaccine, Inc. v. American Cyanamid Co.,* 7 F.3d 1571, 1576, 28 USPQ2d 1333, 1336 (Fed.Cir.1993) (using the specification for guidance "[w]hen the meaning of a claim term is in doubt"); *E.I. du Pont de Nemours,* 849 F.2d at 1433, 7 USPQ2d at 1131 (Fed.Cir.1988) (the written description can supply understanding of unclear claim terms, but should never trump the clear meaning of claim terms). *Cf. Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1187, 48 USPQ2d 1001, 1005 (Fed.Cir.1998) ("In this case, the [disputed term] has a clear and well-defined meaning. This term is not so amorphous that one of skill in the art can only reconcile the claim language with the inventor's disclosure by recourse to the specification."). In these two circumstances, a term or terms used in the claim invites—or indeed, requires—reference to intrinsic, or in some cases, extrinsic, evidence, *see Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583, 39 USPQ2d 1573, 1577 (Fed.Cir. 1996) (reference to extrinsic evidence is proper when intrinsic evidence cannot resolve ambiguity in claim language), to determine the scope of the claim language.

### B

Here, Zebco's primary claim interpretation argument is that the term "heading" in the phrase "heading signal" refers *only* to the direction of the trolling motor, thus requiring that the heading detector, "being disposed to transmit said heading signals," must be affixed to the trolling motor. Zebco, of course, recognizes that the ordinary and accustomed meaning of "heading" connotes only direction, rather than being limited to the direction of the trolling motor. Thus Zebco argues, as it must, for a more limited scope of "heading," to overcome the presumption in favor of the ordinary—and, in this case, broader—meaning.

Because Zebco does not suggest that the phrase "heading signal" lacks clarity as it is used in the claim, in order to establish a reason to import a narrow definition of the term, it must instead argue that the term "heading" has been given a

particular meaning by the patentee. To this end, Zebco argues that language throughout the written description and prosecution history of the '835 patent demonstrates that "heading" in the context of the '835 patent is limited to the direction of the trolling motor. We find this unpersuasive, as did the district court. First, the written description does not describe "with reasonable clarity, deliberateness, and precision" the definition of "heading" proposed by Zebco. *See In re Paulsen*, 30 F.3d at 1480, 31 USPQ2d at 1674. Indeed, the many uses of the term throughout the '835 patent are consistent with a broader definition, one encompassing the directions of both the boat and the trolling motor unit. Compare, e.g., '835 patent, col. 3, lines 58–62 ("The electronic steering system of the present invention continues to monitor the current *heading of the thrust motor*" (emphasis added)) *with* '835 patent, col. 7, lines 37–39 ("Heading detector 204 continuously monitors the current *heading of the boat*" (emphasis added)). Varied use of a disputed term in the written description demonstrates the breadth of the term rather than providing a limited definition. See, e.g., *Enercon GmbH v. International Trade Com'n*, 151 F.3d 1376, 1385, 47 USPQ2d 1725, 1731–32 (Fed.Cir. 1998) (refusing to limit a term used "interchangeably" in the written description to only one of the uses of the term). That the term "heading" is used at various points in the written description to refer to both the direction of the trolling motor and the boat is simply not "a special and particular definition created by the patent applicant," *Renishaw*, 158 F.3d at 1249, 48 USPQ2d at 1121, and is thus an insufficient reason to limit the scope of the term.

Contrary to Zebco's arguments, *Laitram Corp. v. Morehouse Industries, Inc.*, 143 F.3d 1456, 46 USPQ2d 1609 (Fed.Cir. 1998), is inapposite. The court there held that a narrow interpretation of a disputed term was compelled because of statements in the written description that made clear that "the asserted claims will bear *only one* interpretation: that the 'driving surface' limitation is limited to flat driving surfaces," and that the " 'driving surface' limitation ... *requires* flat driving surfaces." *Id.* at 1463, 143 F.3d 1456, 46 USPQ2d at 1614–15 (emphasis added). Here, of course, there is no such unambiguous language in the written description; nothing suggests that "heading" is required to be the heading of the trolling motor. *Cf. id.*

Zebco also argues that the patentee ascribed a special meaning to the term "heading" in the prosecution history. See, e.g., *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378, 49 USPQ2d 1065, 1068–69 (Fed.Cir.1998) (explicit meanings given to claim terms in order to overcome prior art will limit those terms accordingly); *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576, 34 USPQ2d 1673, 1676 (Fed.Cir.1995); *Standard Oil Co. v. American Cyanamid Co.* 774 F.2d 448, 452, 227 USPQ 293, 296 (Fed.Cir. 1985). In particular, Zebco argues that the applicant's statement, in a June 17, 1992 amendment to the '586 application, that "the heading signal ... is dependent solely on the heading of the motor, and totally independent of the orientation of the vessel" is a clear definition of "heading signal" as being limited to the direction of the thrust motor. However, Zebco overlooks the fact that the claims referred to in that passage, claims 4 and 14 of the '586 application, expressly included an additional limitation: that the compass be "in a substantially fixed relationship to said propulsion device," (claim 4) or likewise "in a predetermined relationship with said propulsion device" (claim 14). The argument referenced by Zebco was unquestionably focused on the requirement, *in those claims*, that the compass be attached to the trolling motor. The patentee's suggestion that, where the "substantially fixed relationship" or "in a predetermined relationship" claim limitation was present, the feedback signal (i.e., the heading signal) was dependent on the heading of the motor sheds no light on the meaning of

"heading signal" in claims where that very limitation is not present. Rather, this exchange is an example of how carefully-crafted arguments in support of patentability can avoid creating ambiguous or adverse prosecution history. By stating clearly and particularly that the context of his remarks was in regards to claims 4 and 14, the applicant ensured that those of ordinary skill in the art—as well as courts, if need be—could evaluate the import and scope of his statements. Thus, because this argument was plainly limited to claims including a "fixed" or "predetermined" relationship between the compass and the trolling motor, it cannot be said to be a clear statement limiting the scope of "heading signal" in general. Zebco thus has not shown that sufficient reasons exist to import a limited definition of this term into the clear language of the claim.

We therefore agree with the district court that the ordinary and accustomed meaning of "heading signal" controls.

### C

■ Zebco's second interpretive argument is that the term "coupled" in the phrase "[a] heading lock coupled to a trolling motor" found in the preamble of claim 1 is limited to a mechanical or physical coupling. We are unpersuaded. Even assuming—as did the district court and Zebco—that the language of the preamble of claim 1 constitutes limitations on the claim rather than mere description, see Bell Communications, 55 F.3d at 620, 34 USPQ2d at 1820 (Fed.Cir.1995) ("[W]hen the claim drafter chooses to use both the preamble and the body to define the subject matter of the claimed invention, the invention so defined, and not some other, is the one the patent protects."), Zebco cannot demonstrate that a limitation to the broad and general term "coupled" must be read into the claim.

■ As with "heading signal," Zebco (a) recognizes that the unmodified term "coupled" generically describes a connec-

tion, and does not require a mechanical or physical coupling; and (b) does not suggest that "coupled," as used in the preamble, lacks clarity. Instead, Zebco points to passages of the written description implying the relationship between elements of the preferred embodiment, and argues that such language constitutes a special (and limited) definition of "coupled." For example, Zebco argues that the phrase "feedback means for providing a feedback signal to the control means, wherein the feedback signal is indicative of the direction of thrust," '825 patent, col. 2, lines 32–34, defines "coupled" to mean "mechanically coupled." However, just as the preferred embodiment itself does not limit claim terms, see Renishaw, 158 F.3d at 1248, 48 USPQ2d at 1120, mere inferences drawn from the description of an embodiment of the invention cannot serve to limit claim terms, e.g., Constant v. Advanced Micro–Devices, Inc., 848 F.2d 1560, 1571, 7 USPQ2d 1057, 1064 (Fed.Cir.1988), as they are insufficient to require a narrower definition of a disputed term.

Zebco also identifies statements in the prosecution history which purport to indicate the true (and limited) meaning of "coupled." Specifically, Zebco points to the aforementioned June 17, 1992 amendment of the '586 application, where the applicant argued that "it is not obvious to affix a compass to a propulsion device in a matter recited by [the] claims." However, as we noted above, that statement lends no support to Zebco's position, as it was made in reference to original claims 4 and 14, each of which expressly required that the compass be fixed to the trolling motor.

Because Zebco has not shown a sufficient reason to alter the clear meaning of the term "coupled," we agree with the district court that the term is not limited to a mechanical or physical coupling.

### III

As alternatives to its claim construction arguments, Zebco next asserts that the relevant claim of the '835 patent, as con-

strued by the district court (and now this court), violates the written description requirement of 35 U.S.C. § 112, ¶ 1, and the on-sale bar of 35 U.S.C. § 102(b). These arguments, however, break no new ground, as they essentially repeat Zebco's claim interpretation position that we considered and rejected above.

## A

According to 35 U.S.C. § 112, ¶ 1 (1994), a patent specification must contain a written description of the invention sufficient to "allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *See, e.g., Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479, 45 USPQ2d 1498, 1503 (Fed.Cir.1998) (quoting *In re Gosteli*, 872 F.2d 1008, 1012, 10 USPQ2d 1614, 1618 (Fed.Cir.1989)). Zebco argues that claim 1 of the '835 patent violates this requirement because, in its mind, the written description of the patent speaks of "heading" only in terms of the direction of the trolling motor, and that therefore any construction of "heading signal" encompassing both the direction of the trolling motor and the direction of the boat renders the patent invalid under section 112, ¶ 1. *E.g., Gentry Gallery*, 134 F.3d at 1480, 45 USPQ2d at 1503–04 (finding that the written description did not support the breadth of the claims asserted by the patentee). As we noted above, however, the term "heading" is used interchangeably throughout the written description to refer to both the direction of the trolling motor and the direction of the boat. Compare, e.g., '835 patent, col. 3, lines 58–62 ("The electronic steering system of the present invention continues to monitor the current *heading of the thrust motor*" (emphasis added)) *with* '835 patent, col. 7, lines 37–39 ("Heading detector 204 continuously monitors the current *heading of the boat*" (emphasis added)). Thus, this case is unlike *Gentry Gallery*, in which this court's determination that the patent disclosure did not support a broad meaning for the disputed

claim terms was premised on clear statements in the written description that described the location of a claim element— the "control means"—as "the only possible location" and that variations were "outside the stated purpose of the invention." *Gentry Gallery*, 134 F.3d at 1479, 45 USPQ2d at 1503. *Gentry Gallery*, then, considers the situation where the patent's disclosure makes crystal clear that a particular (*i.e.*, narrow) understanding of a claim term is an "essential element of [the inventor's] invention." *Id.*, 134 F.3d 1473, 45 USPQ2d at 1503. Here, however, the patent disclosure provides ample support for the breadth of the term "heading"; it does not "unambiguously limit[ ]" the meaning of "heading" to the direction of the motor. *Cf. id.* at 1480, 45 USPQ2d at 1504. The district court did not err in ruling that the relevant claim of the '835 patent, as construed, was not invalid under 35 U.S.C. § 112, ¶ 1.

## B

Zebco's "on-sale bar" argument is essentially a reprise of its argument that the '835 patent is invalid under the written description requirement, and thus fares no better. Under 35 U.S.C. § 102(b) (1994), a patent claim is invalid if the patented invention was "on-sale" or in public use in this country more than one year prior to the filing of the patent application from which the claim issued. *See* 35 U.S.C. § 102(b); *Pfaff v. Wells Elecs., Inc.*, —— U.S. ——, 119 S.Ct. 304, 307, 142 L.Ed.2d 261, 48 USPQ2d 1641, 1642 (1998). Zebco's on-sale bar theory is that the '835 patent claims, if construed broadly enough to cover the accused device, are directed to subject matter not disclosed in the '586 application, and thus are not eligible for the filing date accorded that application. Under 35 U.S.C. § 120, claims are granted the benefit of the filing date of an earlier-filed application only if the earlier application provides support according to 35 U.S.C. § 112, ¶ 1 for the later claims. *See* 35 U.S.C. § 120 (1994); *Studiengesells-*

*chaft Kohle, M.B.H. v. Shell Oil Co.*, 112 F.3d 1561, 1564, 42 USPQ2d 1674, 1677 (Fed.Cir.1997). Zebco posits that if the '835 patent is not entitled to the June 1990 filing date of the '586 application, then the invention of the '835 patent was on-sale or in public use more than one year before the July 1992 filing date of the '254 application, which matured into the '835 patent.[2] However, Zebco does not contend that the applicant impermissibly added new matter to the '254 application. *Cf.* 35 U.S.C. § 132 (1994) ("No amendment shall introduce new matter into the disclosure of the invention."). Further, there is no dispute that the disclosures of the '586 and '254 applications—and thus the '324 and '835 patents, respectively—are the same in all but a few respects.[3] Zebco's position thus reduces to the argument that the claims of the '835 patent violate the written description requirement of section 112, ¶ 1. But to state the argument is to realize its objection; as we discussed above, the written description of the '835 patent provides ample support for the ordinary and accustomed meaning of the terms of the '835 claims. Thus, the '835 claims, as construed by the district court and this court, are entitled to the benefit of the filing date of the '586 application. No violation of section 102(b)'s on-sale bar has occurred.

### IV

Zebco has failed to demonstrate to this court that the disputed claim terms of claim 1 of the '835 patent should be interpreted in a way other than their ordinary and accustomed meaning. Therefore, we find that the district court's claim interpretation, and the summary judgment of infringement conditioned thereon, was not erroneous. We also hold that the district court correctly determined that the relevant claim of the '835 patent, as construed,

is not invalid. The judgment of the district court is affirmed.

*AFFIRMED.*

---

**2.** Johnson does not dispute that products embodying the '835 invention were on sale more than one year prior to the filing of the '254 application in July 1992.

**3.** The titles and abstracts are different, for example.