**AMERICAN PHYTOTHERAPY RESEARCH LABORATORY, INC., et al., Plaintiffs,**

v.

**IMPACT NUTRITION, Inc., et al., Defendants.**

No. 2:02–CV–0174C.

United States District Court, D. Utah, Central Division.

May 6, 2002.

Mark M. Bettilyon, Ray Quinney & Nebeker, Salt Lake City, UT, A. John Pate, Gary D. Pierce, Pate Pierce & Baird, Salt Lake City, UT, for plaintiffs.

H. Craig Hall, Chapman & Cutler, Salt Lake City, UT, David G. Hanson, Reinhart Boerner Van Deuren SC, Milwaukee, WI, for defendants.

## ORDER

CAMPBELL, District Judge.

This case involves United States Patent No. 4,525,359 ("the '359 patent"). The '359 patent, an invention of Frank L. Greenway and Georg A. Bray, issued on June 25, 1985. The '359 patent relates to a process for achieving a selective reduction in body weight. Plaintiffs move to enjoin Defendants from infringing the asserted claims of the '359 patent.[1]

### Discussion

The moving party is entitled to a preliminary injunction if it can succeed in showing: (1) a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) the injunction's favorable impact on the public interest. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir.2001). "These factors, taken individually, are not dispositive; rather, the district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested." *Id.* at 1350 (citation and quotation omitted).

### I. *Likelihood of Success on the Merits*

In order to demonstrate a likelihood of success on the merits, Plaintiffs must show that, in light of the presumptions and burdens that will inhere at trial on the merits, (1) they will likely prove that Defendants' accused products infringe the claims of the '359 patent, and (2) their infringement claim will likely withstand Defendants' challenges to the validity and

1. Plaintiffs also seek to enjoin Defendants' alleged infringement of U.S. Patent No. 4,588,724. But that patent was abandoned in 1994 for nonpayment of the required maintenance fee.

2. The court assumes that Plaintiffs' infringement arguments relate only to DermaLEAN

enforceability of the '359 patent. *Id.* at 1350 (citing *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1364 (Fed.Cir.), *cert. denied*, 522 U.S. 963, 118 S.Ct. 397, 139 L.Ed.2d 310 (1997)). "If [a defendant] raises a substantial question concerning either infringement or validity, i.e., asserts an infringement or invalidity defense that the patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue." *Amazon.com*, 239 F.3d at 1350–51.

### A. *Infringement*

Plaintiffs assert that Defendants' DermaLEAN # 2 products[2] literally infringe claim 1 of the '359 patent (for purposes of this motion, the parties' arguments have focused only on claim 1). Claim 1 is set forth below with emphasis added to highlight the disputed terms:

A process for achieving a selective reduction in body weight, comprising the steps of:

delivering specifically to the portion of the body where weight reduction is sought a *therapeutically effective amount* of a beta adrenergic stimulator and

accomplishing a general weight loss program whereby an acceleration of weight loss is achieved from the portion of the body to which the beta adrenergic stimulator was selectively delivered.

('359 patent, col. 5, ln. 50—col. 6, ln. 2).

The court is mindful that it has no obligation to conclusively and finally interpret an asserted claim during a preliminary injunction hearing. *Sofamor Danek*

# 2 products, because Defendants represented in their Opp'n Brief at pages 2 and 4 that DermaLEAN # 1 did not contain a beta-adrenergic stimulator described by the '359 patent and Plaintiffs did not contest this assertion either in its Reply Memorandum or at oral argument.

*Group, Inc. v. DePuy–Motech, Inc.,* 74 F.3d 1216, 1221 (Fed.Cir.1996). Both parties agree for the purposes of this motion that the only disputed term before the court is "a therapeutically effective amount of a beta adrenergic stimulator." The central question is to what extent did the Applicants, in distinguishing a prior reference that disclosed the use of a beta adrenergic stimulator with another active ingredient during prosecution of the '359 Patent, limit the scope of the '359 patent.

### 1. Construction of Disputed Term

 The parties contest the following portions of the proposed definition for the "a therapeutically effective amount of a beta adrenergic stimulator" element of claim 1:

| Claim Element | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| a therapeutically effective amount of a beta adrenergic stimulator | an amount of a beta adrenergic stimulator, therapeutically effective for weight loss with out the necessary addition of another active ingredient to render the beta adrenergic stimulator effective | an amount of a beta adrenergic stimulator, therapeutically effective for weight loss, alone, without the inclusion of any other ingredient to improve or change its function |

 The starting point for interpreting a claim is the language of the claim itself. *Johnson Worldwide Assocs., Inc. v. Zebco Corp.,* 175 F.3d 985, 989 (Fed.Cir.), *reh'g denied, in banc suggestion declined,* (1999). As the *Johnson* court made clear, "a court must presume that the terms in the claim mean what they say, and, unless otherwise compelled, give full effect to the ordinary and accustomed meaning of claim terms." *Id.* (citations omitted). "Arguments and amendments made during the prosecution of a patent application and other aspects of the prosecution history, as well as the specification and other claims, must be examined to determine the meaning of terms in the claims." *Southwall Technologies, Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1576 (Fed.Cir.), *reh'g denied, in banc suggestion declined* (June 21, 1995), *cert. denied,* 516 U.S. 987, 116 S.Ct. 515, 133 L.Ed.2d 424 (Nov. 27, 1995) (citations omitted). "The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." *Id.* (citations omitted).

 The first question is what is the effect of "comprising" on the term "a therapeutically effective amount." The transitional phrase "comprising" generally does result in an "open claim" that will read on processes that add additional elements. *Stiftung v. Renishaw PLC,* 945 F.2d 1173, 1178 (Fed.Cir.), *reh'g denied* (1991); DONALD S. CHISUM, CHISUM ON PATENTS, § 18.03[4][b] (2000) ("Generally, a claim using 'comprising' as a transition is construed as an 'open claim', i.e., it will read on devices or processes, which add additional elements."). Claim 1 reads: "[a] process for achieving a selective reduction in body weight, comprising the steps of...." ('359 patent, col. 5, ln. 50–51). Clearly, "comprising" modifies "steps," so that the number of steps is opened-ended, not the contents within the steps. Therefore, the word "comprising" does not affect the interpretation of the disputed term.

Next, a proper construction must give full effect to the ordinary and accustomed meaning of the phrase "a therapeutically

effective amount." *Johnson*, 175 F.3d at 989. "Therapeutic" means "of or relating to the treatment of disease or disorders by remedial agents or methods." WEBSTER'S NEW COLLEGIATE DICTIONARY 1201 (1973). "Effective" means "producing a ·... desired effect." *Id.* at 359. The desired effect in claim 1 is selective reduction in body weight. In light of these ordinary meanings, the term itself means delivering a sufficient amount of the remedial agent (the beta adrenergic stimulator) to produce a selective reduction in body weight. But this language sheds little light on the central question—whether claim 1 must be interpreted to cover the beta adrenergic stimulator alone, without the inclusion of any other active ingredient, or whether a proper construction rules out only the *necessary* addition of another active ingredient to render the beta adrenergic stimulator effective.

The prosecution history of the '359 patent resolves the question. During the course of prosecution, the Examiner cited U.S. patent No. 4,288,433 issued to Koulbanis ("Koulbanis"). Koulbanis teaches the use of theophylline, a beta adrenergic stimulator, in association with a sulphur-containing organic compound of the thioether type to achieve selective weight reduction. (Amendment after Final Action at 7–8, attached to Pls.' Reply at Ex. J; Koulbanis Patent, col. 2, ln. 11–13). In response to the Examiner's citation, Applicants distinguished their invention over the Koulbanis patent by stating: "Koulbanis cannot be taken to teach the proposition that theophylline can be used by itself to achieve ... selective weight reduction. It is well established that omission of an ingredient previously thought to be critical can serve as the basis for patentability." (Amendment after Final Action at 8, attached to Pls.' Reply at Ex. J).

Plaintiffs argue that in distinguishing Koulbanis, the Applicants only distin-

guished the teaching that a beta adrenergic stimulator must be paired with an additional active ingredient for the compound to induce selective weight loss. According to Plaintiffs, beta adrenergic stimulators can themselves achieve selective weight loss. Thus, a construction that the '359 patent includes "any therapeutically effective amount for weight loss without the *necessary* addition of another active ingredient" would read on a compound such as the Khoulbanis reference. However, the Applicants argued during prosecution that the *omission* of an ingredient previously thought to be critical can be the basis of patentability. Accordingly, Plaintiffs' proposed construction conflicts with the Applicants' language to the Examiner. The court declines to adopt such a construction.

Therefore, the court construes "a therapeutically effective amount of a beta adrenergic stimulator" to mean: "an amount· of a beta adrenergic stimulator, therapeutically effective for weight loss, alone, without the inclusion of any other ingredient to improve or change its function."

### 2. Infringement

█ The court now· turns to the second question: Does claim 1 read on Defendants' accused product. The court has construed "a therapeutically effective amount of a beta adrenergic stimulator" to mean that the scope of the '359 patent is limited to compounds where beta adrenergic stimulators, alone, without the inclusion of any other ingredient to improve or change its function. Now the question is whether the beta adrenergic stimulator in DermaLEAN # 2 acts alone, without the inclusion of any other ingredient to improve or change its function.

Defendants argue that DermaLEAN # 2 contains 2–dimethylaminethanol ("DMAE") which improves the functioning of the beta adrenergic stimulator. On the

Defendants' web site, Defendants state that:

> DMAE is a precursor to the brain chemical acetylcholine, which plays an important role in mood and well-being. It is also believed to be key in the CNS regulation of lipolysis and metabolism (6). Dieting is often believed to lower levels of acetylcholine in the brain, which in turn may work against the dieter by interfering with the normal regulation of metabolism and lipolysis, initiating a less positive outlook and agitating the need for feeding. Mental outlook is vital, as often it is· the dieter's own inability to stick with a restricted caloric intake and exercise regimen that works against his or her progress. Although its effect is presumably not local, the addition of DMAE in DermaLEAN is still intended to support fat loss by helping to regulate normal brain control over tissue metabolism and lipolysis, as well as eliminate feelings of fatigue and disinterest in dieting. In essence, it works to bolster [central nervous system ("CNS")] functioning and the mental state of the user to strengthen the drive and likelihood of success during dieting.

*www. weightlossdietzone.com/dermalean. htm* (viewed on April 19, 2002), attached to (Pls.' Reply at Ex. D). According to Defendants, DMAE has two functions.[3] First, it acts to enhance an individual's mood. Second, it effects the CNS regulation of lipolysis and metabolism. Because DMAE acts to directly regulate lipolysis and metabolism, it improves the effect of the beta adrenergic stimulator.

Plaintiffs argue that DMAE only aids general weight loss and does not improve or change the function of the beta adrenergic stimulator, which is selective weight loss. Yet, this misconstrues the alleged effect of DMAE. DMAE affects (and presumably increases) the rate of lipolysis and the metabolic rate. These effects permit the beta adrenergic stimulator to achieve the goal of selective weight loss, because it prevents the CNS from counteracting the beta adrenergic stimulator's effect in the selected area.

Because DMAE improves the functioning of the beta adrenergic stimulator in DermaLEAN #2, Plaintiffs have not shown that DermaLEAN #2 infringes the '359 patent. According, Plaintiffs have not shown a likelihood of success of the merits.

### B. *Validity*

Defendants argue that claim 1 of the '359 Patent is invalid. Because the court finds that Plaintiffs have not shown DermaLEAN #2 to infringe the '359 patent, the court does not address validity.

### III. *Irreparable Harm*

If a plaintiff in a patent case is successful in establishing a likelihood of success on the merits, then it is entitled to a rebuttable presumption that it will be irreparably harmed if a preliminary injunction does not issue. *See Amazon.com, 239 F.3d at 1350;* accord *Bell & Howell Doc. Mgt. Products Co. v. Altek Systems,* 132 F.3d 701, 705 (Fed.Cir.1997). "This presumption derives in part from the finite term of the patent grant, for patent expiration is not suspended during litigation, and the passage of time can work irremediable harm." *Amazon.com,* 239 F.3d at

---

**3.** Plaintiffs do not specifically dispute or disprove Defendants' allegations about the nature of DMAE. All they contest is whether DMAE is a metabolic regulator. (Pls.' Reply at 6–7). Because Plaintiffs have the burden to prove a substantial likelihood of success, the court assumes for the purposes of this motion that DMAE performs as advertised on the web site.

1350. The presumption of irreparable harm, however, does not arise unless the plaintiff has made a clear showing of patent validity and infringement. See *Nutrition 21 v. Thorne Research, Inc.*, 930 F.2d 867, 871 (Fed.Cir.1991). The court, as discussed above, has concluded that Plaintiffs have not made a clear showing that DermaLEAN #2 infringes the '359 patent. Therefore, Plaintiffs do not receive a strong presumption of irreparable harm.

Plaintiffs claim that a preliminary injunction is necessary to give them a "first-to-market" advantage. (Pls.' Mot. in Support at 16). As Plaintiffs have not shown that DermaLEAN #2 infringes the '359 patent, Plaintiffs have no legal right to be the first-mover or the only entrant in a market.

Plaintiffs have not shown that absent the entry of preliminary injunction, they will be irreparably harmed.

## IV. *Balance of Injuries to the Parties*

To obtain injunctive relief, a party must establish that "its threatened injury outweighs any harm the proposed injunction may cause to the opposing party." *Elam Constr., Inc. v. Regional Transp. Dist.*, 129 F.3d 1343, 1347 (10th Cir.1997), *cert. denied,* 523 U.S. 1047, 118 S.Ct. 1363, 140 L.Ed.2d 513 (1998). Here, Plaintiffs have not shown a legally cognizable harm. Plaintiffs hold no right to exclude others from producing a non-infringing good. Accordingly, Plaintiffs suffer no harm.

On the other hand, Defendants would be harmed, to some extent, if an injunction were to issue. Defendants would have to halt its entire production, marketing, and sales of DermaLEAN #2. The balance of harms weighs in favor of Defendants.

## V. *The Public Interest*

The final factor that Plaintiffs must establish is that an injunction, if issued, would not be adverse to the public interest. *Elam Constr., Inc.*, 129 F.3d at 1347. Public interest favors competition in its various forms. Patent law is founded on competition, and the laws supposedly balance "between the interest in motivating innovation and enlightenment by rewarding invention with patent protection on the one hand, and the interest in avoiding monopolies that unnecessarily stifle competition on the other." *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 63, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998); *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 151, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989). Here, Plaintiffs ask the court to extend a government sponsored monopoly beyond its scope to reach a competitor. This would stifle competition and disturb the careful balance of the patent laws. Therefore, public interest weighs heavily and compellingly in favor of Defendants.

## ORDER

For the foregoing reasons, Plaintiffs' motion for preliminary injunction is DENIED.