LINN, Circuit Judge,
concurring-in-part and dissenting-in-part.
While I concur in the majority’s affirmance of the district court’s grant of summary judgment of lack of anticipation of claims 2 and 3 of United States Patent No. 5,408,749 (“the ’749 patent”) and its determination that the district court did not abuse its discretion in excluding expert testimony, I must respectfully dissent from its conclusion regarding nomnfringement. The majority concludes that there is no infringement because the accused products have an angle 0, between the rear side surface of the inner cutter blade and the cutting edge surface, greater than 90 degrees and, thus, do not read on the claimed “recess,” which, the majority concludes, requires “having an angle 0 of 90 degrees or less.” Ante at-. In my view, the restriction of the scope of the claimed recess to require this angular limitation improperly reads a limitation from the specification into the claims. I can discern no proper basis to do so and would give the “recess” limitation the full scope of its ordinary and customary meaning.
The disputed claimed term “recess” appears in independent claims 1 and 3. Claim 1 recites an electric razor comprising, among other things, “a recess ... formed immediately beneath said cutting edge surface ... whereby said cutting edge surface is made thinner than a thickness of said *246 cutter blade.” Claim 3 recites an inner cutter comprising, “a recess formed below said cutting edge surface.”
Claim terms are to be given their ordinary and customary meaning to one of skill in the relevant art. Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 989 (Fed.Cir.1999). In the context of the specification, the ordinary and customary meaning of “recess” is a cutout. The specification states that “the rear portion of the cutting edge surface (or the portion which faces a direction opposite to the rotational direction of inner cutter) is cut out.” ’749 patent, col. 2, II. 40-43. The specification further states that “The recess 40a is formed by cutting away a portion of the cutting edge surface 41.” Id., col. 4, II. 56-58.
The majority imposes an angular structural limitation on the claim term “recess.” Specifically, the majority construes the claim term “recess” to be a cutout having an angle 0 of 90 degrees or less between the rear side surface of the inner cutter blade and the cutting edge surface. Ante at -. The majority imposes such an angular limitation based on two statements from the specification. In my view, neither statement compels such a conclusion.
First, the majority contends that the “recess” is limited to cutouts having angles of 90 degrees or less in order to accomplish an objective of the invention; namely, to prevent shaving debris and other substances from adhering to the cutter blades. The specification, however, merely identifies preventing shaving debris from adhering as one of two objectives of the invention. The patent also identifies the objective of “providing] an electric razor which can minimize the contact pressure of the inner cutter against the inside or bottom surface of the outer cutter by securing a reduced amount of surface area of the inner cutter that is in contact with the outer cutter.” ’749 patent, col. 2, II. 20-24. Our precedent is clear that “the fact that a patent asserts that an invention achieves several objectives does not require that each of the claims be construed as limited to structures that are capable of achieving all of the objectives.” Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 908 (Fed.Cir.2004). Here, cutter blades with cutouts having angles greater than 90 degrees, which would be excluded under the majority’s construction, would still achieve the objective of minimizing the contact pressure of the cutter blade. The reduction in contact pressure stems from the reduction in the thickness of the cutting edge surface, regardless of any angular limitation. The identification of an objective that is not met when the claim is given its ordinary meaning is not in itself a disclaimer that is sufficient to narrow that ordinary meaning.
The second passage relied on by the majority, states: “In the conventional inner cutter, the angle 0 is greater than 90 degrees as indicated by the dotted lines in [figures] 4 and 5. Accordingly, the shaving debris, etc. tends to adhere to the rear surface 40b of the cutter blade 40.” ’749 patent, col. 5, II. 9-13. The majority interprets the quoted text as a requirement that the cutout angle 0 must be 90 degrees or less. I respectfully disagree.
While the angularity referenced in this statement of the specification is described as affecting the tendency of shaving debris to adhere to the blade, it has no effect whatsoever on the second objective of the invention, namely, the reduction of friction. Thus, this description of inner cutters with angles equal to or less than 90 degrees, when considered in context, is not a dis *247 claimer of subject matter, but simply an explanation of why inner cutters having not only recesses but also these particular angles are preferred embodiments in achieving one of the objectives of the invention. “Such a description, of course, does not limit the scope of the claims.” Honeywell Inc. v. Victor Co. of Japan, 298 F.3d 1317, 1326 (Fed.Cir.2002) (holding that claim need not be construed in a manner that would lead to the solution of both prior art problems discussed in the written description).
The two statements from the specification of the ’749 patent relied on by the majority do not sufficiently evidence an intention to depart from the ordinary meaning of “recess.” Moreover, the specification here does “not suggest that [recesses having angles of 90 degrees or less] are an essential component of the invention, nor is there any language ... in the specification, that disclaims the use of the invention in the absence of [recesses having angles of 90 degrees or less].” Liebel, 358 F.3d at 908. Nor is this case like SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc., 242 F.3d 1337 (Fed.Cir.2001), where the specification specifically disclaimed non-diselosed embodiments by stating that the “structure defined above is the basic ... structure for all embodiments of the present invention contemplated and disclosed herein.” Id. at 1343 (quoting the patents at issue). In sum, in this case I can discern no proper basis for deviating from the ordinary and customary meaning of recess, viz., a cutout.
Regarding the construction of the claimed phrase “recess ... formed immediately beneath” recited in claim 1,1 agree with the majority that “beneath” should not be construed simply as “directly under” because that would exclude the embodiment shown in figure 4. Ante at-. Thus, consistent with the ordinary meaning of recess and in the context of the specification, I would construe the limitation “recess ... formed immediately beneath” as “a cutout beginning at a point immediately adjacent to the point directly under the cutting edge surface.” But I would not read in an additional limitation with respect to the angle 9.
The majority construes the limitation “recess formed below” (claim 3) to have the same scope as “recess ... formed immediately beneath” (claim 1). Ante at -. Under the doctrine of claim differentiation, “there is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims.” Tandon Corp. v. United States Int’l Trade Comm’n, 831 F.2d 1017, 1023 (Fed.Cir.1987). Although claim differentiation only creates a presumption that each claim in a patent has a different scope and is “not a hard and fast rule of construction,” Kraft Foods, Inc. v. Int’l Trading Co., 203 F.3d 1362, 1368 (Fed.Cir.2000) (quoting Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir.1998)), in this case, I see no basis to overcome the presumption.
The majority marshals two arguments in support of its conclusion that the limitation “recess formed below” and the limitation “recess ... formed immediately beneath” should be construed identically. First, because the majority’s construction of the term “recess” requires having a particular cutout angle, the majority reasons that the presence of a cutout angle necessitates construing the limitation “recess formed below” as a recess located immediately beneath. Ante at-. For the reasons set forth above, I do not find that the *248 claimed term “recess” requires any structural angular limitation.
Second, the majority reasons that to read the limitation “recess formed below” more broadly than “recess formed immediately beneath” would be contrary to a stated objective of the invention — -to minimize contact pressure between the surfaces of the inner cutter and outer cutter blades. Ante at-. But the invention has two objectives: minimizing contact pressure and preventing shaving debris from adhering. Both claim 1 and claim 3 need not be construed “in a manner that would lead to the solution of both prior art problems.” Honeywell, 298 F.3d at 1326; see Resonate Inc. v. Alteon Websystems, 338 F.3d 1360, 1367 (Fed.Cir.2003) (“The issue at this point may be stated thus: when the written description sets out two different problems present in the prior art, is it necessary that the invention claimed, and thus each and every claim in the patent, address both problems? We conclude that on the record in this case, the answer is no.”) Claim 3 only requires that the recess be located below, and not immediately beneath, the cutting edge surface. Because I do not find any redefinition of the term or any disavowal of claim scope in the intrinsic evidence, I would ascribe to the limitation “recess formed below” its ordinary and customary meaning of a cutout located “at a lower level” than the cutting edge surface. Webster’s Third New International Dictionary 202 (1993).
I agree with the majority that the district court erred in its claim construction in requiring the recess to be “oriented in a horizontal direction, parallel to the cutting edge surface.” As the majority notes, the patent specification does not support this claim construction. Ante at-. Based on that error and based on the district court’s erroneous construction of the limitations “recess formed below” and “recess ... formed immediately beneath,” I would vacate the district court’s grant of summary judgment and remand.
For the foregoing reasons, I respectfully dissent.