**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 12 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENNTH CIRCUIT

CHARLES WILSON and PATRICIA
WILSON, as parents and next friends of
BRIAN WILSON, a minor, and
CHARLES WILSON and PATRICIA
WILSON, individually,

      Plaintiffs-Appellants,

v.

MERRELL DOW
PHARMACEUTICALS, INC., a
subsidiary of the Dow Chemical
Company, MERRELL NATIONAL
LABORATORIES, INC.,
RICHARDSON-MERRELL, INC., and
SUBSIDIARIES THEREOF,

      Defendants-Appellees.

No. 97-5114

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 82-CV-710-H)

Kenneth J. Chesebro, Cambridge, Massachusetts, (Barry J. Nace, Paulson, Nace &
Norwind, Washington, D.C., and Jack D. Crews, Tulsa, Oklahoma, with him on the
briefs) appearing for the appellants.

George E. Berry, Dickson, Carlson & Campillo, Santa Monica, California, (Robert L.
Dickson, Hall R. Marston, Dickson, Carlson & Campillo, and Dan A. Rogers, Dan A.
Rogers & Associates, P.C., Tulsa, Oklahoma, with him on the brief) appearing for the
appellee.

Before **TACHA**, Circuit Judge, **LUCERO,** Circuit Judge, and **McWILLIAMS**, Senior Circuit Judge.

---

**McWILLIAMS, Senior Circuit Judge.**

---

This 16-year old controversy necessarily has a rather lengthy chronology, which, nonetheless, should be recounted in some detail if the reader is to view the present issues in context.

On July 15, 1982, Charles and Patricia Wilson, individually and as parents and next friends of their son, Brian Wilson, a minor, filed in the United States District Court for the Northern District of Oklahoma a complaint based on negligence, breach of warranty, and products liability against Merrell Dow Pharmaceuticals, Inc. ("Merrell Dow") and related business entities. (On appeal, Merrell Dow is the only remaining defendant.) Jurisdiction was based on diversity of citizenship, 28 U.S.C. § 1332, the plaintiffs being residents of Broken Arrow, Oklahoma, and Merrell Dow having been incorporated in a state other than Oklahoma. The amount in controversy was said to exceed $10,000.00, which was the statutory minimum in 1982 for federal jurisdiction based on diversity of citizenship.

The gist of the complaint was that Patricia Wilson, when pregnant, ingested an anti-nausea drug known as "Bendectin" which had been manufactured and distributed by Dow and that the drug caused Brian Wilson, her son, to be born with, among other things,

"limb defects," for which the plaintiffs sought compensatory and punitive damages. (It appears that Brian Wilson was born without arms.)

On August 18, 1982, Merrell Dow filed its answer denying liability and alleging, *inter alia,* that Patricia Wilson's ingestion of Bendectin did not cause injury to Brian Wilson. On November 22, 1989, Merrell Dow filed a motion for summary judgment, although, so far as we can tell, the motion itself is not in the record before us. Plaintiffs filed a response to Merrell Dow's motion on December 26, 1989, although their response does not appear to be in the present record either. We do know, however, that on March 2, 1990 the district court (Judge James O. Ellison) denied Merrell Dow's motion for summary judgment. That order is in the record. The district court in its short order stated that there were "conflicting arguments regarding causation" and accordingly Merrell Dow's motion for summary judgment "must be overruled and the case must proceed to trial."

Pursuant to 28 U.S.C. § 1292(b), Merrell Dow, on March 26, 1990, made application to the district court for an order certifying an immediate appeal on the issue "of whether the plaintiffs' evidence on the issue of Bendectin causation in humans is admissible and/or sufficient to create a jury question." On July 16, 1990, the plaintiffs filed a "response" to Merrell Dow's application in which they stated "they have no response to said application." Accordingly, the district court on October 4, 1990, granted Merrell Dow's motion for certification and, on October 23, 1990, signed an order for the

immediate appeal of its order denying Merrell Dow's motion for summary judgment.

On March 10, 1994, this court, in *Wilson v. Merrell Dow Pharm., Inc.*, 20 F.3d 379 (10th Cir. 1994) vacated the district court's order of March 2, 1990, and remanded the case to the district court for further proceedings in light of an intervening opinion by the Supreme Court, namely, *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). On May 17, 1994, the district court ordered the parties to file simultaneous briefs on the "applicability of *Daubert* to the instant matter," with simultaneous responses thereto. Briefs were thereafter filed by both plaintiffs and the defendant.

On September 28, 1994, the district court (Judge James O. Ellison) in a comparatively short order again denied Merrell Dow's motion for summary judgment, stating that there was still a "material dispute on the issue of causation." In the same order, the district court also directed the parties to submit a suggested form for immediate certification of its order to this court and stayed further proceedings in the district court. Whether Merrell Dow, or the plaintiffs for that matter, submitted a form for immediate certification is unclear from the present record. In any event, no certification order was signed by the district court to its order of September 28, 1994.

On November 10, 1994, the instant case was reassigned from Judge Ellison, who we are advised had by that time taken senior status, to another judge in the Northern District of Oklahoma, and on March 7, 1995, it was reassigned to Judge Sven E. Holmes, of the same district. On November 30, 1995, the plaintiffs requested a status hearing on

the case, which, as indicated, had previously been stayed pending an interlocutory appeal, which appeal was never taken. At this hearing, Merrell Dow apparently asked, and received, permission to renew its motion for summary judgment. Such a motion was filed by Merrell Dow on February 27, 1996. Plaintiffs' opposition to Merrell Dow's third motion for summary judgment was filed on March 22, 1996. A hearing was held on Merrell Dow's renewed motion for summary judgment on May 16, 1996, and, on May 28, 1996, Judge Holmes granted Merrell Dow's motion. On June 27, 1996, the plaintiffs filed a notice of appeal. That appeal (our No. 96-5157) was dismissed by this court on October 22, 1996 for a perceived failure to comply with Fed. R. Civ. P. 54(b). A so-called "final" judgment was entered by the district court on May 16, 1997, and on June 13, 1997 the plaintiffs filed their present notice of appeal. So much for the chronology!

Counsel in his opening brief states that plaintiffs' "most basic ground for reversing Judge Holmes' decision, one requiring very little analysis, is that on its face it constitutes a fundamental violation of the law-of-the-case doctrine, which is strictly applied in situations where a case is transferred from one judge to another judge and a litigant then seeks---as Merrell did here---to have the second judge revisit issues already fully considered and decided by the first judge." In this regard, counsel argues that the order of Judge Ellison on September 28, 1994, wherein Judge Ellison, after remand by us in *Wilson v. Merrell Dow Pharm., Inc.,* 20 F.3d 379 (10th Cir. 1994), denied Merrell Dow's motion for summary judgment, which order, not having been interlocutorily appealed,

became the law-of-the-case and that Judge Holmes was bound by that order, and could not entertain a further motion for summary judgment. We do not agree.

At oral argument, counsel for plaintiffs conceded that the law-of-the-case argument, as such, had never been made in the district court, though he had argued in the district court that on the merits of the matter Judge Holmes should have ruled as Judge Ellison had on two previous occasions. Be that as it may, it is axiomatic that appellate courts are disinclined to reverse a trial court on a matter that was not raised in the trial court. *Tele-Communications, Inc. v. C.I.R.,* 104 F.3d 1229, 1232 (10th Cir. 1997). Nor are we otherwise persuaded by that argument under the facts of the present case.

From the district court's docket entries it would appear that, on January 22, 1996, Merrell Dow requested that it be allowed to re-argue a motion for summary judgment, which request the district court allowed, there apparently being no objection thereto. Such further motion was thereafter filed on February 27, 1996. In that motion, Merrell Dow relied heavily on the then recent opinion by the Ninth Circuit on remand by the Supreme Court in the *Daubert* case. *Daubert v. Merrell Dow Pharm., Inc,* 43 F.3d 1311 (9th Cir.), *cert. denied,* 516 U.S. 869 (1995). And in making his decision, Judge Holmes was ultimately persuaded by the rationale of that opinion. Judge Ellison could have, himself, reconsidered his earlier ruling in the light of subsequent appellate court decisions, including the opinion of the Ninth Circuit in *Daubert* after remand, and we see no reason why Judge Holmes could not reconsider the matter. In this connection, Judge

Ellison's order of September 28, 1994 was admittedly an interlocutory order. The real issue, as we see it, is whether Judge Holmes erred in granting Merrell Dow's further motion for summary judgment. In this latter regard, plaintiffs contend that Judge Holmes also erred, on the merits of the matter, in granting Merrell Dow's motion for summary judgment.

Before proceeding further, we will first address the *Daubert* cases. In *Daubert v. Merrell Dow Pharm., Inc.,* 951 F.2d 1128 (9th Cir. 1991)(*Daubert I*), the Ninth Circuit first considered the matter. In that case, as here, a woman during pregnancy ingested Bendectin manufactured and distributed by Merrell Dow which allegedly caused limb reduction birth defects. The district court, in *Daubert v. Merrell Dow Pharm., Inc.,* 727 F.Supp. 570 (S.D. Cal. 1989), had granted Merrell Dow's motion for summary judgment based on an insufficient showing as to causation, citing *United States v. Kilgus,* 571 F.2d 508 (9th Cir. 1978).

On appeal, the Ninth Circuit affirmed the district court and, in so doing, stated that an "[E]xpert opinion based on a scientific technique 'is admissible if it is generally accepted as a reliable technique among the scientific community'," *Daubert I*, 951 F.2d at 1129 (citing *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923)). In *Frye*, the Court of Appeals of the District of Columbia was concerned with the admissibility of the results of a so-called "deception test" made upon a defendant in a criminal case, and, in holding that such results were inadmissible, that court spoke as follows:

Numerous cases are cited in support of this rule. Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, <u>the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.</u>

We think the systolic blood pressure deception test has not yet gained such standing and scientific recognition among physiological and psychological authorities as would justify the courts in admitting expert testimony deduced from the discovery, development, and experiments thus far made.

*Id.* at 1014. (Emphasis added.)

On certiorari, the Supreme Court vacated the judgment of the Ninth Circuit and remanded the case for further proceedings "consistent" with its opinion. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993) (*Daubert II*). In so doing, the Supreme Court held that the *Frye* "general acceptance" test had been superseded by the Federal Rules of Evidence, especially Rule 702. Under the Federal Rules of Evidence, the Supreme Court stated that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. In *Daubert II*, the Supreme Court also stated that "nothing in the text of this Rule [702] establishes 'general acceptance' as an absolute prerequisite to admissibility." *Id.* at 588. In other words, "general acceptance" was not a *sine qua non,* although it could still have a "bearing on the inquiry." *See id.* at 594.

On remand, the Ninth Circuit, in *Daubert v. Merrell Dow Pharm., Inc.,* 43 F.3d

- 8 -

1311 (9ᵗʰ Cir. 1995) (*Daubert III*), elected not to remand the case to the district court, and on its own proceeded to hold that the evidentiary matter offered by the plaintiffs to defeat Merrell Dow's motion for summary judgment did not meet even the relaxed standard to determine admissibility set forth in *Daubert II* as concerns reliability, and, particularly, as concerns relevancy. And again the Ninth Circuit affirmed the district court's grant of summary judgment for Merrell Dow. A petition for certiorari review of *Daubert III* was denied by the Supreme Court. *Daubert v. Merrell Dow Pharm., Inc.,* 516 U.S. 869 (1995).

At the hearing on Merrell Dow's further motion for summary judgment, plaintiffs, in the instant case, conceded that their evidentiary matter before the district court was the same as the evidentiary matter before the district court in the *Daubert* cases, but argued that the Ninth Circuit's holding in *Daubert III* was incorrect as a matter of law, and that not only was its decision not "binding" on the district court in our case but should not have been followed because it was unpersuasive.[1]

We review a grant, or denial, of a motion for summary judgment *de novo*. *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10ᵗʰ Cir. 1995); *Universal Money Ctrs., Inc. v. AT&T*, 22 F.3d 1527, 1529 (10ᵗʰ Cir.) *cert. denied*, 513 U.S. 1052 (1994). However, we review the district court's determination in the instant case that plaintiffs'

---

[1]We note that certain of counsel in the instant case were also counsel of record in the *Daubert* cases. Also, certain affiants in the instant case were also affiants in *Daubert.*

evidentiary matter was insufficient to permit admission of its so-called "scientific evidence" concerning the causation issue under an abuse of discretion standard. *Hinds v. General Motors Corp.,* 988 F.2d 1039, 1047 (10th Cir. 1993); *Durtsche v. American Colloid Co.,* 958 F.2d 1007, 1011 (10th Cir. 1992). In this general connection, in *Daubert II,* the Supreme Court spoke as follows:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. We are confident that federal judges possess the capacity to undertake this review. Many factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test. But some general observations are appropriate.
> *Daubert II,* 509 U.S. at 593.

If there was prior doubt regarding the standard to be used by us in reviewing an evidentiary ruling to exclude at trial a plaintiff's proffered scientific evidence regarding causation, such was resolved in the recent case of *General Electric Co. v. Joiner,* ____ U.S. ____, 118 S. Ct. 512 (1997). In *Joiner*, the district court excluded testimony of the plaintiffs' expert witnesses and granted the defendant's motion for summary judgment. On appeal, the Eleventh Circuit reversed. On certiorari, the Supreme Court reversed. In reversing, the Supreme Court held that abuse of discretion was the proper standard of review of the district court's evidentiary ruling excluding the proffered testimony of the

- 10 -

plaintiffs' expert witnesses. *Joiner,* 118 S. Ct. at 517. In so doing the Supreme Court approved language appearing in earlier Supreme Court cases to the effect that whether a district court receives or excludes such evidence, an appellate court should not reverse unless the district court's ruling is "manifestly erroneous." *Id.* Further, the Supreme Court in *Joiner* rejected the suggestion that, since the grant of summary judgment was "outcome determinative," the district court's ruling excluding the expert witness testimony should have been subject to a "more searching" standard of review than abuse of discretion, and held that the Eleventh Circuit in applying a more "stringent" review failed to give the district court "the deference that is the hallmark of abuse of discretion review." *Id.*

So, the real issue in the present case is, did the district court abuse its discretion in holding that the evidence tending to show that Patricia Wilson's ingestion of Bendectin, manufactured and distributed by Merrell Dow, caused her son, Brian Wilson, to be born without arms was insufficient to render it admissible in an ensuing trial.[12] Our study of the record before us leads us to conclude that Judge Holmes did not abuse his discretion, i.e., his ruling excluding plaintiffs' expert witnesses' testimony was not "manifestly erroneous," and should be afforded "deference," and, having made that "gatekeeping" function, Judge Holmes did not thereafter commit error in granting Merrell Dow's motion

---

[2]As indicated, this evidence, in the main, was contained in various affidavits submitted by the plaintiffs in opposition to Merrell Dow's first motion for summary judgment, which was also supported by affidavit.

for summary judgment. It is quite true that Judge Holmes was not bound to follow *Daubert III,* which fact he fully understood when, at oral argument on the further motion for summary judgment, he stated that the "last time I checked the Ninth Circuit wasn't in Denver!" However, such didn't preclude Judge Holmes from considering the rationale of *Daubert III,* and following it, if he believed such was the proper disposition of the matter before him.

In affirming, we reject counsel's suggestion that the Ninth Circuit in *Daubert III* (as well as the district court in the present case) failed to follow the direction of the Supreme Court in *Daubert II* in the following particulars: failure to focus solely on methodology and not on conclusions; and finding inadmissibility on lack of detail without first allowing further elaboration under Fed. R. Evid. 705.

In this general connection, it should be noted that in *Daubert II* the Supreme Court vacated the judgment of the Ninth Circuit in *Daubert I* and remanded the case to the Ninth Circuit "for further proceedings consistent with this opinion." In *Daubert III*, the Ninth Circuit reconsidered the matter in the light of, and presumedly in a manner it thought to be consistent with, *Daubert II.* Thereafter, a petition for certiorari was filed, which petition the Supreme Court denied on October 2, 1995. *Daubert v. Merrell Dow Pharm., Inc.,* 516 U.S. 869 (1995). In thus observing, we are fully aware that a denial of a petition for certiorari is generally considered to be only that—a denial of the petition—and not to be interpreted as "Judgment affirmed." *See*, for example, *Maryland*

*v. Baltimore Radio Show, Inc.,* 338 U.S. 912, 919, and *Dairy Distributors, Inc., v.*

*Westerm Conference of Teamsters,* 294 F.2d 348, 352 (10th Cir. 1961).

Believing that Judge Holmes did not abuse his discretion, and, such being the case, that summary judgment was therefore proper, we affirm.

Judgment affirmed.