# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

**Patrick J. Fisher, Jr.**
**Clerk**

**Elisabeth A. Shumaker**
**Chief Deputy Clerk**

August 16, 1999


**TO:**   ALL RECIPIENTS OF THE ORDER AND JUDGMENT

**RE:**   98-3246, *United States v. Battle*
Filed on August 6, 1999

The order and judgment filed in this matter omitted the name of the authoring judge. Senior Circuit Judge Robert H. McWilliams entered the decision for the court.

Please make the correction to your copy of the decision.

Sincerely,

Patrick Fisher, Clerk of Court


By:   Keith Nelson
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 6 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

SHAWN BATTLE,

    Defendant-Appellant.

No. 98-3246
(D.C. No. 97-40005-01)
(District of Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, Circuit Judge, **LUCERO**, Circuit Judge, and **McWILLIAMS**, Senior Circuit Judge.

---

In a one-count indictment filed on January 9, 1997 in the United States District Court for the District of Kansas, Shawn Battle, aka "Black," Terrence Canteen, aka "Travis Brown," and "Big Country," James Culp, aka "Kane," and Richardo Clark, aka "Ricky," were jointly charged with conspiring from December 8, 1991 until October 1, 1996 in the District of Kansas with each other, and with ten other persons who were identified by name and with others whose names were unknown to the grand jury, to distribute in excess of 50 grams of cocaine base, commonly known as crack cocaine, and

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3

cocaine hydrochloride, commonly known as powder cocaine, in violation of 21 U.S.C. § 846, with reference to 21 U.S.C. § 841(a)(1).  Canteen entered into a plea agreement with the government and later testified as a government witness at the trial of Battle, Culp and Clark.  A jury convicted Battle and Culp of conspiracy, but acquitted Clark.  Battle was later sentenced to imprisonment for 360 months.  He now appeals his conviction.[1]

Without going into any detail at this time, it was the government's theory of the case that Battle, and others from the New York City area, decided to come to Kansas where they engaged in a long-running and highly profitable drug operation wherein local drug sellers and users were recruited and incorporated into an extensive drug distribution operation wherein drugs flowed from New York City to Junction City and Manhattan, Kansas.

On appeal, Battle raises six issues: (1) the district court erred in refusing to strike from the indictment the alias "Black;" (2) the district court erred in allowing testimony relating to the number of telephone calls to residences and motor vehicles in Junction City and Manhattan, Kansas; (3) the district court erred in admitting expert testimony concerning a signature on a Western Union money transfer record; (4) the district court erred in admitting testimony that a key taken from Battle in an inventory search occurring at the time of his arrest "fit" locks on certain residences and a vehicle which Battle had

---

[1]Culp also appealed his conviction and sentence.  Our No. 98-3254, *United States v. Culp,* decided this date, wherein we affirmed Culp's conviction and sentence.

access to and where drugs had been found; (5) the district court erred in admitting evidence of "mere association" and "character evidence" regarding Battle; and (6) the district court erred in denying Battle's motion for judgment of acquittal made at the close of evidence based on a fatal variance between the crime charged in the indictment and the proof adduced at trial, i.e., the indictment charged one continuing conspiracy and the proof thereof showed "multiple conspiracies."

As indicated, after a two-week trial, the jury convicted Battle and Culp of conspiracy and acquitted Clark. We are only concerned with Battle in this appeal. The government in its case-in-chief called a plethora of witnesses, including one co-defendant, Terrence Canteen, five co-conspirators, numerous drug users and sellers, as well as many law enforcement officers. At the conclusion of the government's case, counsel for Battle moved for a judgment of acquittal under Fed. R. Crim. P. 29. That motion was denied. Though Battle did not, himself, testify, counsel did call one defense witness, an investigator in the public defender's office, who testified briefly about Battle's employment record in New York City. In closing argument, counsel's basic position was that the testimony of the government's witnesses, particularly the testimony of the co-conspirators, should not be believed, since it was "bought" by the government, "not with money but with freedom."

On appeal, Battle does not contend that the verdict is not supported by the evidence. Rather, counsel asserts, in the main, trial error by the district court in

overruling defense objections to government evidence.

As indicated, in the caption of the indictment and in the body of the indictment Battle was identified as aka "Black." The other three defendants were also identified both in the caption and the body of the indictment by their respective true names and aliases used. Prior to trial, counsel for Battle filed a motion to strike the name "Black" from both the caption and the body of the indictment, claiming that the use thereof was "prejudicial" and was not necessary since Battle denied that he had ever been known as "Black." At a hearing on that motion, the government argued that several of their witnesses would testify that they knew Battle by his street name "Black." The district court denied the motion with the comment that it would appear that "the evidence may include reference to the defendant's alias . . . ." And the evidence did. As we read it, several government witnesses testified that they knew Battle by his street name "Black." And the fact that one of Battle's co-conspirators may have on occasion used the nickname "Black" is of no particular moment. The important fact is that several government witnesses knew Battle by his street name "Black." In this general regard, the government's evidence indicated that Battle, and certain other defendants, were frequently referred to by their street names, rather than by their true names, and, according to counsel, such indicated an effort by Battle and the others to conceal their true identities. In any event, under these circumstances, the district court did not abuse its discretion in refusing to strike the aka "Black" from the caption and body of the indictment.

In support of the foregoing, see *United States v. Clark,* 541 F.2d 1016 (4th Cir. 1976), and *United States v. Skolek,* 474 F.2d 582 (10th Cir. 1973). *See also United States v. Lowe,* 25 F.3d 1059 (1994 WL 237502)(10th Cir. 1994). In *Clark,* the Fourth Circuit stated that a pretrial motion to strike an alias mentioned in the indictment should not be granted if the government intends to introduce evidence that a defendant used a particular alias in the commission of the crime charged. *Id.* at 1018. In *Skolek*, we held that use of an alias in an indictment which was taken into the jury room was permissible where there was testimony that a defendant had used the alias. *Id.* at 586. *See also United States v. Glass,* 128 F.3d 1398, 1408 (10th Cir. 1997) where we stated that a defendant's use of an alias to conceal his true identity is relevant to show consciousness of guilt.

We recognize that courts have held that only when proof of an alias is relevant to identifying a defendant should a court allow its inclusion in the indictment and its subsequent introduction at trial. See, e.g., *United States v. Wilkerson,* 456 F.2d 57, 59 (6th Cir. 1972). Here, however, proof of the use of the alias "Black" helped identify Battle as a participant in the conspiracy. In this general regard, counsel have not drawn our attention to any reported case where a conviction has been overturned because of a court's failure to strike an alias from the indictment. In *Wilkerson,* the district court had, in fact, stricken, on motion, an alias used in the indictment, but the United States Attorney nonetheless in opening statements read the alias used in the indictment to the jury and again referred to it in closing argument. The Sixth Circuit, however, declined to reverse

the conviction, concluding that any error did not warrant reversal.

Counsel's next argument is that the district court erred in admitting testimony concerning telephone calls to and from New York City telephone numbers and to and from certain telephone numbers in the Junction City and Manhattan areas. The records themselves were identified by representatives of New York and Kansas phone companies. Using these records, Michael Life, a member of the Junction City police force, testified as to the number of calls to and from New York and to and from Kansas. The purpose of such testimony was to show the fact of communication between persons in New York and those in Kansas, in other words, to show the New York connection with midwest Kansas. That the content of no call was known is not significant. It was the fact of the calls, and the number thereof, that, according to counsel, constitute circumstantial evidence supporting the direct evidence of a conspiracy. As indicated, there was an abundance of direct testimony from a co-defendant and several co-conspirators of a conspiracy and Battle's involvement therein, and the fact that there were numerous phone calls made between the conspirators tended to corroborate the direct testimony. We find no error in the district court's handling of the matter. The admission, or exclusion, of proffered evidence at trial is a matter within the sound discretion of the trial court, and its ruling will not be overturned on appeal absent an abuse of that discretion. *United States v. Scarborough,* 128 F.3d 1373, 1378 (10th Cir. 1997). We find no such abuse of discretion.

Counsel next argues that the district court erred in admitting the testimony of Dennis McPhail, a document examiner for the Kansas Bureau of Investigation. McPhail related his educational record and testified that he had been employed by the Bureau for 23 years, the first 11 as a drug analyst, and the following 12 years as a document examiner. His experience as a document examiner was thoroughly explored on voir dire, direct and cross-examination. The district court then found that McPhail's "specialized knowledge" would assist the jurors in their determination of the case and that he was qualified as an expert witness "by knowledge, skill, experience, training and education to give such an opinion." Whereupon, McPhail was shown a Western Union money transfer wherein a Tyler Evans was the sender, and the person receiving the money transfer was "Anthony Jenkins." The signature "Anthony Jenkins" appeared on the transfer. McPhail was then shown exemplars of Battle's signature given by him at the time of his booking shortly after his arrest. McPhail testified that he had previously examined both the questioned signature and the exemplar of Battle's signature given at the time of booking, and then testified, in effect, that, in his opinion, Battle had affixed the signature of "Anthony Jenkins" on the Western Union transfer.

On appeal, counsel asserts that the admission of McPhail's testimony violates *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). We are not persuaded. In *Daubert* the Supreme Court held that the "general acceptance" test of *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923) had been superseded by the Federal Rules of

Evidence, especially Rule 702. That rule reads as follows:

> **Rule 702.** Testimony by Experts
>       If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

It is true that in *Daubert* the court was concerned with so-called "scientific" testimony. However, in *Kumho Tire Co. Ltd. v. Carmichael,* ___ U.S. ___, 119 S.Ct. 1167 (1999), the Supreme Court held that *Daubert* applied not only to "scientific" testimony, but to all expert testimony. 119 S.Ct. at 1174. In our view, the district court's finding that McPhail's proffered testimony was admissible under the provisions of Rule 702 did not constitute any abuse of discretion and should not be disturbed by us on appeal. *See Wilson v. Merrell Dow Pharm., Inc.,* 160 F.3d 625, 629 (10th Cir. 1998). Our study of the record on appeal convinces us that McPhail's proffered testimony met the reliability and relevancy test of *Daubert*. Be that as it may, in any event any error in this regard is, in our view, harmless error when the evidence is considered as a whole. There was much eyewitness testimony from co-conspirators, users and sellers, which testimony the jury obviously gave credence to, showing that Battle was not only a party to a conspiracy but one of the leaders thereof. The Western Union money transfer was merely one bit of circumstantial evidence tending to corroborate the testimony of, as we said, a plethora of witnesses linking Battle to the conspiracy.

Counsel's fourth ground for reversal is that Battle's Fourth Amendment right to be

free from unreasonable searches and seizures was violated. Battle was arrested at the Kansas City International Airport near Kansas City, Missouri in early October, 1996. He apparently was incarcerated in a jail in Missouri for a brief time and then transferred to Geary County Detention Center in Junction City, Kansas on or about October 5, 1996. When he was booked into the Detention Center an inventory search was apparently made, and his personal items, including some keys, were taken from him. About a week later Detective Michael Life went to the Detention Center and obtained the keys taken from Battle in the inventory search. Life tried these keys in the locks of certain residences and motor vehicles, which, at that time, were suspected of having been used in the drug conspiracy, some of which, as we understand it, had been searched pursuant to warrant. Life found that the keys "fit" the locks on certain of these residences and vehicles, and was prepared to so testify. However, prior to trial, counsel for Battle filed a motion to suppress Life's testimony that the keys taken from Battle at the time of the inventory search "fit" the locks in question on the grounds of a Fourth Amendment violation. The district court, after hearing, denied the motion to suppress, and Life testified along the lines indicated at trial. As indicated on appeal, counsel argues that Battle's Fourth Amendment rights were violated and that his conviction should be reversed for that reason. We disagree.

As we understand it, counsel concedes that the initial taking of Battle's personal items, i.e., clothing, airplane ticket and the keys, at the time he was incarcerated was an

inventory search and non-violative of the Fourth Amendment. *See Illinois v. Lafayette,* 462 U.S. 640, 646 (1983). His argument is that it was unreasonable and violative of the Fourth Amendment for Detective Life about a week later to take the keys from a police custodian and use them to run a test, so to speak, to see if they fit locks of places suspected of harboring contraband. In other words, according to counsel, we are not here involved with a search incidental to a lawful arrest, but rather we are here concerned with a "search incidental to incarceration," incarceration, which, incidentally, was a "lawful incarceration." It is apparently counsel's belief that, though the authorities could have used the keys, as Detective Life later did, at the time of the inventory search, they could not lawfully do so a week later. We do not agree with this reasoning, and under the facts above outlined, we hold that there was no violation of Battle's Fourth Amendment rights. In support of our resolution, *see United States v. Edwards,* 415 U.S. 800, 807-08 (1974); *United States v. Thompson,* 837 F.2d 673, 674 (5th Cir.), *cert. denied*, 488 U.S. 832 (1988); and *United States v. McVeigh,* 940 F.Supp. 1541, 1556 (D. Colo. 1996).

Counsel's fifth ground for reversal is that the district court erred in admitting "mere association and character evidence." Our study of the record is that such is not the case. In this regard, there certainly was no abuse of discretion by the district court. *See United States v. McVeigh,* 153 F.3d 1166, 1189 (10th Cir. 1998). It should be remembered that this was a joint trial of three defendants, Battle, Culp and Clark. And an essential element of the crime charged was that the three conspired with each other, and others, to

- 10 -

violate 21 U.S.C. § 846 and 28 U.S.C. § 841.

Counsel's final ground for reversal is that the district court erred in denying Battle's motion for a judgment of acquittal based on a fatal variance between the crime charged in the indictment and the evidence adduced at trial, which affected "substantial rights" of Battle. It is argued that the indictment charged one conspiracy and that the evidence, if believed, showed four or five conspiracies. We are not persuaded. Whether a single or multiple conspiracies exist is a fact question for the jury, and the jury's determination is viewed in a light most favorable to the government. *United States v. Powell,* 982 F.2d 1422, 1431 (10th Cir. 1992), *cert. denied,* 508 U.S. 917 (1993). We agree with the government that, when the evidence is viewed in a light most favorable to the government, it shows that a New York group, which included Battle, decided to go to Kansas where they engaged in a long-running, highly profitable and extensive conspiracy that recruited local drug sellers and users in an underground operation that had as its goal the sale of drugs for profit.

Judgment affirmed.

ENTERED FOR THE COURT,

Robert H. McWilliams
Senior Circuit Judge

- 11 -