**ANR PIPELINE COMPANY, et al., Plaintiffs,**

v.

**John D. LAFAVER, et al., Defendants.**

**No. 96–1089–JTM.**

United States District Court, D. Kansas.

Nov. 9, 1999.

Richard D. Greene, Morris, Laing, Evans, Brock & Kennedy, Chtd., Wichita, KS, Karen L. Pauley, Rebecca H. Noecker, Colorado Interstate Gas Co., Colorado Springs, CO, for Plaintiffs.

Kevin M. Hill, Finley, Miller, Cashman, Weingart, Schmitt & Hill, Hiawatha, KS, Allen G. Glendenning, Richard L. Friedeman, Watkins, Calcara, Rondeau, Friedeman, Bleeker, Glendenning & McVay, Chtd., Great Bend, KS, Keith D. Hoffman, Abilene, KS, Robert G. Frey, Ozawkie, KS, Gordon B. Stull, Stull & Rein, Pratt, KS, Nicholas S. Daily, Depew and Gillen, L.L.C., Wichita, KS, J. Richard Lake, Holton, KS, Daniel H. Diepenbrock, Miller & Diepenbrock, P.A., Liberal, KS, for Defendants.

## MEMORANDUM ORDER

MARTEN, District Judge.

Plaintiffs ANR Pipeline Company and Colorado Interstate Gas Company brought the present action against various officers of the State of Kansas, as well as numerous Kansas counties and their officers. The pipelines complain that certain property tax exemptions were unfairly and unconstitutionally granted to railroads operating in Kansas, and that such exemptions were not granted to pipeline companies. On June 26, 1996, the court denied motions to dismiss submitted by the state defendants, which focused primarily on a claim of Eleventh Amendment immunity. Many of the county defendants joined in filing motions to dismiss, although these motions were not extensively briefed.

On July 21, 1998, the Tenth Circuit reversed the decision denying the state defendants' motion to dismiss. *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178 (10th Cir.1998), cert. denied, —— U.S. ——, 119 S.Ct. 904, 142 L.Ed.2d 902 (1999). The court concluded that the doctrine of sovereign immunity barred the pipelines' claims against the state defendants. The county defendants did not participate in the appeal.

Following remand of the matter, the state defendants were dismissed from the action. (Dkt. No. 202) The matter is currently before the court on the renewed motion for dismissal of various county defendants. The court has reviewed the pleadings submitted by the parties, and finds, for the reasons stated herein, that dismissal is appropriate.[1]

---

1. While the current motion to dismiss was pending, the pipelines obtained permission (Dkt. No. 71) for the filing of an amended complaint (Dkt. No. 72) on June 16, 1999 adding additional counties and officers, and modifying the pipelines' allegations of unconstitutional deprivation. The court has reviewed the amended complaint, and finds nothing there which would support a continuation of the action in light of the court's findings today. The court's ruling herein will apply to all parties currently before the court.

The history and underlying facts of the present action were set forth in detail in the earlier order of this court and in the order of the Tenth Circuit, and the court incorporates those findings herein. As to the factual contentions in the pleadings immediately before it, the court must note how, despite length of the briefs, those pleadings engage the matters stated by the other party very rarely. More particularly, the defendant counties have made a number of points, not previously made in the earlier round of briefing, which the pipeline plaintiffs have wholly failed to rebut. These include the opening section of the counties' brief in which they articulate various facts or statutory provisions in support of their contention that they, as counties, play no real role in the underlying complaint of the pipelines: that 80% of the railroad's property was exempted from valuation by the state. The plaintiffs in their response never articulate what particular powers of the counties were misused.

More important, in light of the findings below, is the evidence presented by the counties in relation to the proceedings before the state courts. A key theme of the pipelines' argument has been that the state court procedures were arbitrary and capricious in not allowing them to present their constitutional claims in CIG II and CIG III (to use the terminology relating to the state litigation, see 150 F.3d at 1183–85). The counties have produced copies of the appellate briefs submitted in those cases by the pipelines, which indicate that the pipelines did advance constitutional arguments—they just did so very briefly, in passing. Thus, rather than an unaccountable failure to address central, vital, constitutional arguments, the decisions in the state courts may be viewed as appropriate conclusions to arguments that were advanced in a peripheral and abbreviated manner. The plaintiff pipelines' response and surrebuttal do not controvert that such arguments were actually made.

Turning to the issues presented by the counties' motion, the first is the plaintiffs' invocation of the law of the case doctrine.

The pipelines argue that the counties "cannot be heard" on the issues presented in their motion, since the court has already resolved those issues against the counties in its earlier order. (Surrep. at 2). To the extent that this suggests the law of the case doctrine somehow actually prohibits the court considering (or reconsidering) these issues, the court must find the pipelines construe the doctrine far too broadly.

> Federal District Courts exercise broad authority to dispose of cases in stages. Decisions made by a district court during the course of litigation establish the law of the case. The law of the case doctrine does not, however, limit the court's power to reconsider or change its decision, it merely protects the ability of the court to build to its final judgment by cumulative rulings.

18 Moore's Federal Practice (3rd Ed.), § 134.22[1][a] at 134–49 (1999).

The Tenth Circuit has held that the law of the case doctrine means that "findings made at one point during litigation become the law of the case for subsequent stages of that same litigation." *United States v. Webb,* 98 F.3d 585, 586 (10th Cir.1996), *cert. denied,* 519 U.S. 1156, 117 S.Ct. 1097, 137 L.Ed.2d 229 (1997). "The law of the case 'doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *United States v. Monsisvais,* 946 F.2d 114, 115 (10th Cir.1991) (quoting *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983)). In *Wilson v. Meeks,* 98 F.3d 1247, 1250 (10th Cir.1996), *qualified on other gds., Ensminger v. Terminix International,* 102 F.3d 1571 (10th Cir.1996), the court wrote:

> "The law of the case is a judicial doctrine designed to promote decisional finality. Once a court decides an issue, the doctrine comes into play to prevent the re-litigation of that issue in subsequent proceedings in the same cases." *Pittsburg & Midway Coal Mining Co. v. Watchman,* 52 F.3d 1531, 1536 n. 4 (10th

Cir.1995) (citing *Arizona v. California*, 460 U.S. 605, 618–19, 103 S.Ct. 1382, 1391–92, 75 L.Ed.2d 318 (1983)). The doctrine is considered only a rule of practice and is not a limit on a court's power or authority. *Id.*

The court most recently addressed the issue in *Wilson v. Merrell Dow Pharmaceuticals Inc.*, 160 F.3d 625, 628 (10th Cir. 1998). Plaintiffs argued that the trial court had erred in ruling that the plaintiffs had failed to provide adequate scientific proof that the defendant's product, Bendectin, caused their injuries. Plaintiffs argued this ruling was in error, since another judge (Judge Ellison who subsequently took senior status and transferred the matter) in the same case had denied summary judgment on the same issue. The Tenth Circuit ruled that the renewed summary judgment motion did not violate the law of the case doctrine, based upon additional rulings by the Ninth Circuit in the seminal *Daubert* case. The court held that "Judge Ellison could have, himself, reconsidered his earlier ruling in the light of subsequent appellate court decisions, including the opinion of the Ninth Circuit in *Daubert* after remand, and we see no reason why Judge Holmes could not reconsider the matter." 160 F.3d at 628.

█ Here, none of the county defendants appeared in the interlocutory appeal, none of their issues were presented, and the Tenth Circuit did not directly address any of their issues. Instead, the court simply decided that the state defendants were entitled to Eleventh Amendment immunity. Further, as noted earlier, the county defendants' earlier briefs on the initial motions to dismiss were extremely brief. The present motion to dismiss is the first instance in which the counties have argued extensively in this matter. The court finds that the law of the case doctrine does not bar consideration of the issues raised in the current motion to dismiss.

█ The first argument presented by the counties is that they, like the state defendants, are entitled to Eleventh Amendment immunity. The court must reject this argument. As a general rule municipalities and counties are not considered state actors for Eleventh Amendment purposes. The Tenth Circuit most recently addressed the issue in *Robertson v. Morgan County*, No. 97–1469, 1999 WL 17787, at *3–4 (10th Cir. January 6, 1999):

As a general rule, counties and political subdivisions of states are not entitled to Eleventh Amendment immunity. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) (noting that the Court has "consistently refused to construe the Amendment to afford political protection to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power'."); *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) ("The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances, but does not extend to counties and similar municipal corporations.") (internal citations omitted; emphasis added); *Elam Construction, Inc. v. Regional Transportation District*, 129 F.3d 1343, 1345 (10th Cir.1997) (Eleventh Amendment immunity extends to entities created by state governments which operate as their alter egos or instrumentalities; it "does not ... extend to political subdivisions of the state, such as counties or municipalities."), cert. denied, 523 U.S. 1047, 118 S.Ct. 1363, 140 L.Ed.2d 513 (1998); *Mascheroni v. Board of Regents of the University of California*, 28 F.3d 1554, 1559 (10th Cir.1994) (same); *Meade v. Grubbs*, 841 F.2d at 1529 n. 17 (10th Cir.1988) ("Eleventh Amendment immunity extends only to state officials, and does not protect county or local officials."). *See also Printz v. United States*, 117 S.Ct. at 2382 n. 15 (the "distinction in our Eleventh Amendment jurisprudence between States and munici-

palities is of no relevance" to a Tenth Amendment issue; "[w]e long ago made clear that the distinction is peculiar to the question of whether a governmental entity is entitled to Eleventh Amendment sovereign immunity.").

We reject the Board's suggestion that this has been changed by *Seminole Tribe.* There is nothing in Seminole Tribe which changes the general rule that counties are not entitled to Eleventh Amendment immunity. In fact, in *Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), decided after *Seminole Tribe,* the Court determined that the St. Louis Board of Police Commissioners does not share the immunity of the state of Missouri, even though the governor appoints four of the five members, where the state is not responsible for the Board's financial liabilities and the Board is not subject to the state's direction or control in any other respect. Id. at 117 S.Ct. 908 n. 1.

The Board also argues that it is entitled to immunity because it is an "arm-of-the-state." "Under the arm-of-the-state doctrine, [Eleventh Amendment] immunity extends to entities created by state governments which operate as their alter egos or instrumentalities." *Elam Construction,* 129 F.3d at 1345. Whether an entity is an arm of the state is determined by examining the powers, nature and characteristics of the agency under state law. *Meade v. Grubbs,* 841 F.2d at 1525. The specific factors to be reviewed include: 1) the characterization of the entity under state law; 2) the guidance and control exercised by the state; 3) the degree of state funding received by the entity; and 4) whether the entity may levy taxes or issue bonds. *Sonnenfeld v. City and County of Denver,* 100 F.3d at 749. "Historically, the most important consideration is whether a judgment against the entity would be paid from the state treasury." *Elam Construction,* 129 F.3d at 1345.

The district court reviewed these factors and concluded that the Board is not an arm of the state for Eleventh Amend-ment purposes. The Board argues that under Colorado law counties are "constituent parts of the state government subject to the plenary control of the Governor and the Colorado General Assembly." Even so, a county is not considered an arm of the state for Eleventh Amendment immunity purposes. *See Wigger v. McKee,* 809 P.2d 999, 1003 (Colo.App.1990) (holding that a county is not an arm of the state for purposes of the Eleventh Amendment).

The county defendants in the present action have failed to demonstrate that they are entitled to the protection of sovereign immunity. They do present an argument which emphasizes their lack of freedom on the issue of assessments, but this does not translate into deeming them as "arms of the state." As indicated in the passage from *Robertson,* the most important factor is whether the monies to be returned will come out of the state treasuries. Although, as defendants stress in their brief some of the revenues from various mill levies went to state funds, it is also true that the plaintiff pipelines have explicitly disclaimed any interest in recovering such taxes.

However, the court finds that the present action must be dismissed under the Tax Injunction Act 28 U.S.C. § 1341 and their general comity argument. The defendants present these two arguments separately, based on the majority opinion in *Fair Assessment in Real Estate v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271, indicating that while the Tax Injunction Act was grounded on principles of comity, such an argument might still exist outside the Act. It is not clear that such a distinction exists. The Court in relevant passage in *McNary* clearly indicates that it could "discern no significant difference" under the standards of the Act and under general principles of comity—in both cases the test is whether the state system provide for plain, efficient, and timely relief for persons appealing decisions regarding state taxes.

As the Tenth Circuit summarized in *Marcus v. Kansas Department of Revenue*, 170 F.3d 1305, 1308–09 (10th Cir. 1999):

The Tax Injunction Act imposes a "broad limitation on federal court interference with state collection of taxes [and] is not limited to injunctive relief. The Tax Injunction Act bars declaratory relief, and suits for damages as well." *Brooks v. Nance*, 801 F.2d 1237, 1239 (10th Cir.1986) (internal citations omitted). The purposes of the Act are "to promote comity and to afford states the broadest independence, consistent with the federal constitution, in the administration of their affairs, particularly revenue raising." *Wright v. McClain*, 835 F.2d 143, 144 (6th Cir.1987); *accord Collins Holding Corp. v. Jasper County, S.C.*, 123 F.3d 797, 799 (4th Cir.1997) (explaining that the Tax Injunction Act "reflects the importance of the taxing power to the operation of state governments" and the goal of preventing federal courts from interfering with state revenue collection); *Thrope [v. Ohio]*, 19 F.Supp.2d [816,] 822 [(S.D.Ohio, 1998)] ("The Tax Injunction Act is based on principles of federalism and is designed to prevent a federal court from interfering with the administration of a state tax system."). Thus, the Tax Injunction Act "operates to divest the federal courts of subject matter jurisdiction over claims challenging state taxation procedures where the state courts provide a 'plain, speedy and efficient remedy.'" *Lussier v. Florida, Dep't of Highway Safety & Motor Vehicles*, 972 F.Supp. 1412, 1417 (M.D.Fla.1997) (citation omitted).

The district court in *Marcus* had previously ruled that the Tax Injunction Act barred the plaintiff's claim, which concerned amounts collected by the state for disabled parking placards. The court (Judge Saffels) ruled that the plaintiff had failed to make any showing that the appeal procedures of the State of Kansas were not "plain, speedy, and efficient." On appeal, the Tenth Circuit reversed, based upon a finding that the collected amounts were better viewed as fees, rather than taxes, and hence not within the scope of the Tax Injunction Act.

The court also took the occasion to modify the holding, made in the previous appeal in the present action, that the Tax Injunction did not create a jurisdictional bar to federal court remedies. *ANR Pipeline Co. v. Lafaver*, 150 F.3d at 1186 n. 8. Noting recent decisions by the Supreme Court, the *Marcus* court concluded that the Act should be considered "a bar to federal jurisdiction over cases involving the enjoyment, suspension, restraint, levy, or collection of taxes imposed by states." 170 F.3d at 1308–09 n. 2. Included in this review of decisions was the explicit statement in *Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 522, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981) that the primary purpose of the Tax Injunction Act is "to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes."

In its order of June 26, 1996, the court concluded that the Tax Injunction Act was no bar to the present action, holding that the failure of the state courts to elaborate on the rationale for dismissing the pipelines claims meant that the remedies available were not plain, speedy, and efficient:

The pipelines consistently attempted to protect their rights under state law, yet in the end their constitutional claims were essentially terminated without any consideration. The fact that procedures exist provides little assistance, and thus no bar under the Tax Injunction Act, if the procedures are ignored in fact.

1996 WL 363047, at *2.

As stated previously, the Tenth Circuit did not rule on the application of the Tax Injunction Act. However, in one passage during its discussion of Eleventh Amendment immunity, the court wrote:

Seeking an escape from this doctrinal logic, the pipelines allege that the *Ex parte Young* mechanism is still available for this suit because Kansas consistently

has failed to provide an adequate state remedy. The district court agreed with both the conclusion and the premise of this argument. *See CIG IV*, 1996 WL 363047 at *2. We are inclined to disagree. Although the pipelines did not persuade the Kansas courts to give them the relief they sought, they did have the opportunity to raise all their constitutional claims, and in fact they availed themselves of such opportunities. *An adequate state remedy only guarantees adequate due process access to the state courts; it does not guarantee victory to the taxpayer on the merits of the claims asserted.* Nevertheless, we need not make a final decision as to the adequacy of Kansas' judicial procedures because the Court's decision in *Coeur d'Alene Tribe* compels the conclusion that the Eleventh Amendment bars the pipelines' suit.

150 F.3d at 1192–93 (emphasis added).

The pipelines point out, quite rightly, that this comment is dicta. It is, nonetheless, persuasive authority for the court to reconsider its earlier ruling. In addition, as noted earlier, the court is now in possession of evidence indicating that the pipelines were permitted and did present their constitutional claims in the state litigation, but did so in a desultory and limited manner. The failure of the state courts to expound on the reasons for its rejection of these arguments is not a violation of due process, nor does it show that plain, speedy and efficient relief does not exist in Kansas for aggrieved taxpayers.

There are several other cases at the district court level addressing the adequacy of Kansas tax appeal procedures. In *Atchison Topeka and Santa Fe Ry. Co. v. Lennen*, 531 F.Supp. 220, 242 (D.Kan. 1981), Judge Rogers wrote:

Kansas remedies for refunds of back taxes are plain, speedy, and efficient, so § 1341 is not abrogated. *Rosewell*, supra, held that "(o)n its face the 'plain, speedy and efficient remedy' exception appears to require a state court remedy that meets certain minimal procedural

criteria," and the Tax Injunction Act's legislative history supports this procedural interpretation. The court further held that "because (the) remedy imposes no unusual hardship on respondent requiring ineffectual activity of an unnecessary expenditure of time or energy we cannot say that it is not 'efficient.'" 450 U.S. at 512–518, 101 S.Ct. at 1228–1231. Plaintiffs assert that the Kansas remedy is not plain, speedy or efficient because it is unduly burdensome in that it requires the railroads to protest in every county. They also assert that they are not required to comply with the same protest procedures which other taxpayers must follow. Although plaintiffs may not be required to exhaust all the state administrative remedies when a suit is brought under the 4–R Act, Rosewell makes it clear that state procedures must be complied with in a § 1983 action.

This court held in its order of December 3, 1980, and has previously held that the tax refund and protest procedures of Kansas, K.S.A. 79–2005, are plain, speedy, and efficient. *See Natural Gas Pipeline Co. of America, v. Sergeant*, 337 F.Supp. 88 (D.Kan.1972); *Northern Natural Gas Co. v. Wilson*, 340 F.Supp. 1126 (D.Kan.1971). The procedure is not "unduly burdensome" because it requires no "ineffectual activity or unnecessary expenditures of time or energy" since the railroads must pay taxes individually to the counties anyway. The protest procedure is a device by which the counties and state fairly can be notified that even though no suit has been brought and no appeal taken, the taxes being paid are disputed. The state can then take precautions to protect itself financially in case liability is proved.

In the same vein, in *Northern Natural Gas v. Wilson*, 340 F.Supp. 1126, 1129–30 (D.Kan.1971), *aff'd* 405 U.S. 949, 92 S.Ct. 1170, 31 L.Ed.2d 227 (1972) a per curiam opinion issued by a three judge panel (Hill, Brown, and Theis) wrote:

Thus, the issue presented is whether or not a plain, speedy and efficient remedy exists in the Kansas courts for an aggrieved party to present his protests to assessed state taxes and litigate their validity. Such remedy does exist in Kansas and because plaintiff has failed to utilize and exhaust such remedy, this action must be dismissed.

The Kansas Legislature has provided a remedy whereby a taxpayer may protest assessed taxes by paying the protested tax to the appropriate county treasurer and filing his protest. Also, the taxpayer must, within thirty days after filing said protest, either commence an action for the recovery of the protested tax in some court of competent jurisdiction, or file application with the State Board of Tax Appeals for a hearing on the validity of the protest. K.S.A. § 79–2005. A state assessed utility can maintain an action to recover illegal taxes assessed against its property under § 79–2005, and such action is properly filed in the district court of the county in which the taxes were paid under protest. *Sinclair Pipe Line Co. v. State Commission of Revenue & Taxation,* 181 Kan. 310, 311 P.2d 342 (1957). Any adverse decision rendered in the state district court is appealable to the Kansas Supreme Court. K.S.A. § 60–2101 et seq. In the event the action is filed by the taxpayer with the State Board of Tax Appeals, K.S.A. § 74–2426 governs. When a taxpayer contests the validity of the tax assessment, he must first present his claims to the State Board of Tax Appeals after complying with the general requirements of K.S.A. § 79–2005. *McManaman v. Board of County Commissioners,* 205 Kan. 118, 468 P.2d 243 (1970). Decisions rendered by the State Board of Tax Appeals are appealable to the state district courts and thereafter to the Kansas Supreme Court. K.S.A. § 74–2426. Any decision of the Kansas Supreme Court is subject to final review by the United States Supreme Court if federal constitutional issues are involved.

Two other possible remedies exist whereby plaintiff might have presented his allegations of illegal taxation to the Kansas courts. The first of these is K.S.A. § 60–907(a), which provides as follows: "(a) Illegal tax, charge or assessment. Injunctive relief may be granted to enjoin the illegal levy of any tax, charge or assessment, the collection thereof, or any proceeding to enforce the same."

It appears that plaintiff could possibly proceed in the Kansas courts through § 60–907(a). *Mobil Oil Corporation v. McHenry,* 200 Kan. 211, 436 P.2d 982 (Syl.10), 200 Kan. 211, 436 P.2d 982 (1968); *Schulenberg v. City of Reading,* 196 Kan. 43, 410 P.2d 324 (1966). The Kansas Supreme Court has held that the "limited scope of our jurisdiction in matters of assessment is the same, whether relief is sought by way of injunction under K.S.A. § 60–907(a) or under the tax protest statute (K.S.A. § 79–2005)." *McManaman v. Board of County Commissioners,* supra, 205 Kan. at p. 123, 468 P.2d at p. 247. The other remedy is that of an original action in the Kansas Supreme Court by way of mandamus. Kansas Constitution, Article 3, § 3. If plaintiff is determined to have an injury or interest specific and peculiar to himself, such as being "singled out" in each of the counties for different treatment than other taxpayers receive, the remedy of mandamus and other extraordinary remedies are available to him. *Mobil Oil Corporation v. McHenry,* supra, at Syl. 17.

Plaintiff's contention that such confusion exists between the statute enacted by the Kansas Legislature and subsequent court decisions of the Kansas Supreme Court so as to make such remedies uncertain and inadequate is without merit. As we read them, the decisions referred to are not in conflict, are seemingly very clear in their holdings, and articulate the differences and similarities of tax relief remedies under K.S.A. 60–907 and § 79–2005, as well as pointing

out the administrative functions in ad valorem taxation of the county assessing officials and the state director of property valuation, and who are proper parties in a legal cause of action against either. In *Panhandle Eastern Pipe Line Co. v. Herren*, 207 Kan. 400, 485 P.2d 156 (1971), the Kansas Supreme Court held "the remedy provided for paying taxes under protest (K.S.A. § 79–2005) is not an exclusive remedy. It remains available when other proceedings are pending between the parties, or when other proceedings are possible." In *Panhandle Eastern Pipe Line Co. v. Dwyer*, 207 Kan. 417, 485 P.2d 149 (1971), the Kansas Supreme Court reviewed the decision of the State Board of Tax Appeals and held that "unless there has been fraud, corruption or conduct so oppressive, arbitrary or capricious as to amount tó fraud in the assessment, the courts cannot interfere." We note in passing that this is an almost identical standard for determination of one of the bases for invoking Fourteenth Amendment relief in a federal court. The *Herren* court held that an aggrieved party had various methods available for presenting the protested tax to the courts, while the *Dwyer* decision was limited to the scope or standard of judicial review afforded a State Board of Tax Appeals decision.

Subsequent to the order of June 26, 1996, the court had the opportunity to review the procedures of review of the sales tax assessments in Kansas in *Ribadeneira v. Vennard*, No. 95–1535–JTM, 1997 WL 86334 (Feb. 26, 1997), aff'd. 161 F.3d 18 (10th Cir.1998), which involved a claim by a restaurant owner that he had been unfairly subjected to sales tax assessments. The court reviewed the state's procedures governing the review of such assessments, and concluded that "[h]ere, as in *Rosewell [v. LaSalle Nat'l Bank*, 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981) ], the statutory scheme provided Ribadeneira with a plain, speedy and efficient remedy that included an opportunity to have his federal constitutional claims

addressed by the Kansas courts, with an ultimate review by the Supreme Court." Id. at *4.

In sum, the court finds from its survey of case law and the statutes of Kansas, that Kansas presented the pipelines with a plain, speedy and efficient remedy for its claims regarding unfair property tax valuation. Accordingly, the claims advanced herein are barred by the principles of comity and the Tax Injunction Act. The court, in light of this finding, will not address the additional arguments raised by the defendants in their motion to dismiss.

■ Given the extensive briefing provided in the present matter—which includes the court's permission of an additional pleading not normally permitted under the local rules of practice in the form of a surreply brief—the court neither invites nor encourages a motion for reconsideration. Any motion for reconsideration must comply with Fed.R.Civ.P. 59 and 60, D.Kan.Rule 7.3. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of due diligence. *Anderson v. United Auto Workers*, 738 F.Supp. 441, 442 (D.Kan.1990). Such a motion may not revisit issues already addressed, nor may it advance new arguments or supporting facts which were otherwise available for presentation when the original summary judgment motion was briefed. *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir.), *cert. denied*, 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992).

Given the briefing previously noted, any such motion and accompanying memoranda may not exceed five double-spaced pages in length, including supporting arguments and authorities, regardless of the number of points raised. A response shall

also be limited to five pages. No replies may be filed.